RECEIVED
SDNY PRO SE OFFICE
2021 JUL -1 AM 10: 39

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

JANE DOE

                      *Pro Se* Plaintiff,

           -against-                              Docket No.: 20 Civ ____ (___)

THE TRUSTEES OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK, and KEVIN PITT,
ALYSSA ANZALONE-NEWMAN, KRISTIN
COLLADO, in their official capacities,

                      Defendants,

-------------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S ORDER TO SHOW CAUSE TO ENJOIN
# DEFENDANT COLUMBIA UNIVERSITY
# FROM CONCLUDING PLAINTIFF'S PRESENT TITLE IX CASE WITH AN
# UNLAWFUL PROCEEDING

## I. INTRODUCTION

This *pro se* Plaintiff is presently being deprived of rights and benefits she is entitled to under Title IX of the Education Amendment of 1972, 20 U.S. Code § 1681(a), and the Department of Education's corresponding regulations. Plaintiff faces irreparable harm from Defendant Columbia University. Defendant will conclude and reach a finding for Plaintiff's present Title IX case on or after **July 1, 2021 at twelve's clock in the noon** by a hearing panel based on written materials including any statements collected from parties the investigative report (see Exhibit).

Defendant scheduled a hearing on June 29, 2021 which does not allow cross-examination, any expert/fact witness's participation in real-time, or any new evidence. Plaintiff opted to no participate such unlawful and inadequate proceeding, and Defendant informed Plaintiff that the hearing panelists will reach a finding on or after **July 1, 2021 at twelve's clock at twelve's clock in the noon** based on written materials collected accepted by Title IX investigators.

The sole issue to be determined for the hearing panel is credibility. The respondent, John Roe, has claimed he is "Not responsible" for the allegation of sexual assault. The Hearing Panel must decide whether they believe Plaintiff or the respondent John Roe. However, Plaintiff as an individual with disability as defined by *Americans with Disabilities Act of 1990*, and a victim suffering from post-traumatic symptoms resulted from the sexual and emotional abuse by John Roe, is being denied the rights and benefits of expert witness/evidence, cross-examinations to all witnesses/parties, which is mandated by the rules promulgated by the United States Department of Education (hereinafter "Title IX Rule").

Under new Title IX Rules, covered schools are required to allow expert witness/testimonials and cross-examination in a real-time hearing. Without such benefits, the outcome of investigation will very likely be erroneous and unfair. Especially when none of those Title IX investigators/school administrators/hearing panelists has any clinical background.

Second, both complainant and respondent are entitled to due process rights during credibility assessment although Plaintiff is the accuser instead of the accused of sexual assault.

Since Title IX proceeding determines the liability of alleged misconduct <u>solely based on the credibility of the accuser</u>, that whether the accuser is making false accusation in reporting a case. Plaintiff's disability and trauma response are substantive factors in her sexual assault claim (see Complaint), and she has submitted documentations from expert along with her testimonials during investigation. However, Defendant's Title IX investigators excluded all those expert testimonials/evidence because those non-clinicians deemed those records are "beyond the scope" of the investigation, and ultimately decided that Plaintiff had "strong motive to lie "and was not credible in her allegation of sexual assault by John Roe.

Due process rights encompass effective counsel, which should include assistance of expert when the subject's medical condition is at issue in relation to the alleged misconduct. So far Plaintiff has been deprived of such rights as Defendants assessing her credibility and whether she was lying regarding her sexual assault claim.

Defendant has actual knowledge of Plaintiff's disability and sexual trauma collaborated by several experts back in March 2020, which caused her behave in certain way before and after the incident. However, Defendant decided that such information is beyond the scope for their consideration (see Exhibit D of Complaint, item 33, 34, 49) therefore exclude those evidence however deemed Plaintiff as "not credible" based on the exact manifest of her disability and sexual trauma.

More importantly, the new Title IX Rule not only permits, but requires, that institutions like Columbia University afford parties in Title IX proceedings to be represented by an attorney who may cross-examine witness in real time. Cross-examination is an essential tool to challenge of witnesses and both parties, and is essential in proceedings of this nature and gravity.

In the investigative report, one of the three witnesses (the NYPD Detective/Witness#1) produced a response that contradicted his own narratives in the original incident report wrote by himself in August 6, 2019, among other collaborating documents. The other two witnesses' statement are deemed insufficient or not credible because they did not "specify" the sexual acts John Roe and Plaintiff had engaged. In fact, it was John Roe who never specified the sexual acts to those witnesses although he did confess to them about the nature of the experience with this Plaintiff.

There is an obvious need to include testimonials from expert witness, and involve and cross-examine all fact witnesses.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff respectfully directs the Court to the Complaint and accompanying Exhibits for a full recitation of the facts and procedural history.

## III. LEGAL ARGUMENT

### THE COURT SHOULD ENJOIN DEFENDANT COLUMBIA UNIVERSITY FROM CONDUCTING AN UNLAWFUL TITLE IX HEARING AGAINST PLAINTIFF BY ORDERING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits. *Diversified Mortgage Investors v. U. S. Life Title Insurance Company of New York*, 544 F.2d 571 (2d Cir. 1976) In proceedings challenging a university's determination on a student conduct matter, status quo "has been interpreted to refer to the last uncontested set of facts preceding the pending controversy." *Garshman v. Pennsylvania State University*, 395 F. Supp. 912,920 (M.D. Pa. 1975)

"In order to obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of success on the merits; " (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the non-moving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." *Doe v. Pennsylvania State University*, 276 F. Supp. 3d 300, 307(M.D. Pennsylvania 2017); *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F 3d

32, 36-37 (2d Cir. 2018); see *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ("As a matter of equitable discretion, preliminary injunction does not flow as a matter of course from a Plaintiff's showing of a likelihood of success on the merits. Rather, a court must also consider whether the movant has shown that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest.")

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision in the merits can be rendered." *Doe v. Rensselaer Polytechnic Institute*, No. 1:18-CV-1374 (FJS/CFH), 2019 WL 181280, at 2* (N.D.N.Y. Jan 11, 2019). The Second Circuit has held that preliminary relief should be granted "where a Plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardship tipping decidedly in favor if the moving party." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F. 3d 105, 110 (2d Cir. 2014) (*quoting Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009). "A balance of equities tipping in favor of the party requesting injunctive relief means a balance of the hardships against the benefits." *Napierski v. Guiderland Democratic Cmte.*, No. 18-CV-846, 2018 WL 5135702, AT *12 (N.D.N.Y. Nov. 3, 2017)

"In order to establish a likelihood of success on the merits, movants must show that their chance of prevailing is greater than fifty percent." *Connor v. New York State Com'n on Judicial Conduct*, 260 F. Supp. 2d 517, 520 (N.D.N.Y. 2003), citing *Eng v. Smith*, 849 F. 2d 80, 82 (2d Cir. 1988) "There may remain considerable room for doubt." *Id* In other words, the moving party must "" make a clear showing of probable success. The party does not need to show that it will ultimately prevail on the merits." *Donohue v. Paterson*, 715 F. Supp. 2d 306, 314 (N.D.N.Y. 2010) District courts are afforded considerable discretion in their determinations. *See Moore v. Consol. Edison Co. of New York, Inc.*, 409 F. 3d 506, 511 (2d Cir. 2005).

> **A. Plaintiff has a reasonable probability of success on his Title IX claims against Defendants because Defendant Columbia University discriminated against her on the basis of her sex.**
>
> Plaintiff has a reasonable probability of success on her Title IX complaint and Defendants have discriminated against her on the basis of her sex at least in three ways. First, there has been selective enforcement by Defendants throughout the investigation although Plaintiff and John Roe were similarly situated. i.e. requesting medical and mental health records from Plaintiff but failed to request those from John Roe, when both have those records available in relation to their Title IX complaints. Second, upon reviewing Plaintiff's submission of medical records, Defendants then decided to exclude those inculpatory evidence in the investigative report and generated a finding in favor of John Roe. Third, Defendants has full autonomy to choose which Title IX policy to use for Plaintiff's case and won't be panelized by OCR for choosing either one. However, it has been deliberate indifferent to the current inadequacy of its old Title IX policy, which does not require expert witness, witness participation at hearing and cross examination to all parties in a live

hearing; it has been deliberate indifferent to Plaintiff's verified disability under *The Americans with Disabilities Act of 1990* and her sexual trauma collaborated by her clinicians. Eventually, Defendants concluded that Plaintiff is "not credible" based on the manifest of her sexual trauma and disability, with none of the investigative team has any clinical background. By choosing the rescinded, outdated Title IX policy, though Defendants mitigated its administrative risk, it also denied Plaintiff the procedural process she is due under Title IX and the United States Department of Education's promulgated regulations (effective August, 2000).

Plaintiff is not allowed to present documents and evidence that Defendants had previously determined to be irrelevant, no witness is allowed to participate in the hearing process although one of the witnesses had contradictory statements regarding the same incident at different proceedings.

The hearing scheduled for June 29, 2021 at 9 a.m. under the currently rescinded Title IX policy is unlikely to reach a different outcome than the previous findings by the investigators if no additional evidence or witness involvement is permitted in the process. Given that Plaintiff's medical condition is a substantive factor in her claims, and Defendants determine John Roe's liability for alleged sexual assault solely based on Plaintiff's credibility, Plaintiff's own testimonial alone won't be sufficient without expert opinion.

If there is a complainant making true allegation about sexual assault in a Title IX proceeding, that means this complainant mostly likely has suffered from post-traumatic symptoms to some degree after the incident. There are four known trauma responses depending on the individuals: fight, flight, freeze and fawn, however the Title IX investigators explicitly do not recognize "freeze" and "fawn" as trauma response(which is commonly seen in people with Complex PTSD), or Plaintiff's alleged cognitive impairment/disability in relation to her interaction with John Roe during and after the incident. Those investigators do not have any clinical background although they concluded that it was Plaintiff's preexisting condition subjected her to abuse. On the contrary, the investigators did not mention John Roe's implied mental condition that may have predisposed him to four known sexual assaults during his time at Columbia, although John Roe once promised to several individuals that he would seek professional help to address his behavioral issues/sexual behaviors.[1]

Before the scheduled hearing, Defendants already told Plaintiff that it would not allow any witness's involvement at hearing (all three witnesses can testify that the incident between Plaintiff and John Roe is sexual assault in nature), nor will there be cross-examination by the parties' advisors. Defendant asserted that the Title IX regulations were not retroactive, although Plaintiff has not yet had a hearing, she would not be entitled to the process prescribed by the new Title IX Rules.

Defendant's response is clearly unreasonable in light of the known circumstances.

---

[1] Under New York State Law and Columbia's GBM policy, sexual violence is defined as an intentional act by the perpetrator.

More importantly, it is not the province of covered education institutes to dictate whether the Title IX Rules have retroactive effect. Under the laws of the United States, the fox does not guard the henhouse. It is the district court's role to determine whether the Title IX Rules which became effective on August 14, 2020 apply to Plaintiff's June 29, 2021 Title IX hearing. (See *Doe v. Rensselaer Polytechnic Inst.*, 1:20-CV-1185 (N.D.N.Y. Oct. 16, 2020).)

Second, Plaintiff has a more than reasonable probability of success for a second reason. Defendants excluded essential inculpatory evidence in order to reach favorable outcome to male respondent, at expense of female complainant's rights/benefits entitled under Title IX. Such disparate treatment of evidence demonstrates that Defendants discriminated against Plaintiff because she is a female. Such allegations meet the standard that Plaintiff will have a reasonable probability of success sufficient to enjoin Defendant Columbia from conducting an unlawful hearing in violation of Title IX.

### B. Plaintiff will be irreparably harmed prior to a resolution on the merits without an injunction ordered by the Court.

Irreparable harm is defined as the type of harm that cannot be remedied by money. As discussed above, the hearing panel will conclude Plaintiff's present case on **July 1, 2021 at twelve's clock at twelve's clock in the noon** based on written materials collected. Plaintiff is facing immediate harm as Defendant has decided that it will not implement New Title IX regulations she is due under the Title IX Rules. The harm Plaintiff will suffer from Defendant's actions by concluding an unlawful and discriminatory Title IX proceeding without the required procedural protections is real, immediate or irreparable. Reaching a final finding after a flawed and unlawful procedure means Plaintiff will have her rights jeopardized and will never receive the justice she has been seeking after exhausting criminal, civil, and administrative means, as well as an open OCR complaint to evaluate the Title IX proceeding conducted by Defendants.

Additionally, Plaintiff is facing imminent psychological and emotional harm if John Roe end up being found not responsible as a result of unfair and inadequate procedure. Sexual violence is both a personal and community matter. For victims of sexual assault, it's very important to have their own experience validated by the larger community they are in.

Unlike loss of employment opportunities/income, the above harms cannot be repaired by money.

### C. Balance of the Hardships Tips in the Plaintiff's Favor

When the potential harm that injunctive relief during adjudication of the present case could cause to defendants is weighed against the harm that denial of the present request would cause to Plaintiff, the balance weighs overwhelmingly in Plaintiff's favor. Plaintiff's Title IX matter has been pending since August 6, 2019, almost two years up to today, mainly due to its procedural irregularities. There is no urgency to conclude Plaintiff's case on or after **July 1, 2021 at**

**twelve's clock at twelve's clock in the noon** other than the pressure from OCR's possible investigation.

By contrast, Plaintiff would suffer substantial irreparable harm if Defendant was allowed to proceed with an unlawful Title IX hearing with Plaintiff's rights and well-being in jeopardy under a currently rescinded Title IX.

### D. The Public Interest Would not be Disserved, but only furthered, by the Issuance of an Injunction.

In recent years, university students turn to federal courts to challenge the school's Title IX findings resulted from two common reasons: lack of due process and deliberate indifference. The Title IX Rules has addressed and responded both complainant's and respondent's needs, by affording procedural protections for the accused and expert witness/mediation options for survivors—to have their experience validated by clinicians, and empower them by allowing them make decision for their own experience through mediation.

OCR has given universities the most possible discretion as to how they implement this new Title IX Rules and which policy to use for incidents occurred before and after August 14, 2020. For example, Columbia keep its old policy in effective for cases occurred after August 14, 2020 (see Exhibit) based on its merits, although OCR never made any announcement about putting two policies in place. However, when it comes to Plaintiff's Title IX case, Defendant Columbia then used OCR as excuse and chose to not use new Title IX Rules, being deliberate indifferent to the current inadequacy of old Title IX Rules.

In Plaintiff's case, using the old policy can constitute sex discrimination in itself. See *Doe v. Rensselaer Polytechinic Inst.*, 1:20-CV-1185 (N.D.N.Y. Oct. 16, 2020).

Upon information and belief, Defendant Columbia is not the only school in this country that implements old Title IX policy for cases where the hearing has not taken place yet. If this Court can grant Plaintiff's application for Temporary Restraining Order and enjoin Defendant from concluding Plaintiff's Title IX case on or after **July 1, 2021 at twelve's clock at twelve's clock in the noon** without cross-examination and witnesses' participation in a live hearing as mandated by Title IX Rules. such injunctive relief will certainly benefit the public and serve as valuable guidance to legislative branch and universities as to how they should address pending Title IX cases as moving forward.

With all four prongs of the above-outlined test satisfied, this Court should grant the temporary restraining order and preliminarily enjoin Defendants from concluding Plaintiff's present Title IX case on or after **July 1, 2021 at twelve's clock at twelve's clock in the noon.**

Dated:    New York, New York
          June 29, 2021

/s/ JD

By: JANE DOE
*Pro Se* for Plaintiff

# EXHIBIT

# COLUMBIA UNIVERSITY
### IN THE CITY OF NEW YORK

STUDENT CONDUCT AND COMMUNITY STANDARDS

June 15, 2021

▬▬▬▬▬▬▬▬▬▬

Sent electronically to ▬▬▬▬▬▬▬▬▬▬

Dear ▬▬▬▬

On June 2, 2021, you submitted a Disciplinary Action Agreement indicating that you did not wish to respond to the alleged University policy violations of Stalking and Violation of a No-Contact Directive. Additionally, you requested that a Hearing Panel be convened to adjudicate the matter. The other party responded that he was Not Responsible for the alleged Policy violations of Sexual Assault: Penetration (penis to vagina), Sexual Assault: Penetration (penis to mouth), and Sexual Assault: Contact (hand to vagina). As detailed in the Policy, the matter will now proceed to a hearing. **I have scheduled a call to discuss the hearing procedures and any questions you have for Tuesday, June 22, 2021 at 10:30 a.m. EST.** You can reach me by calling (212) 854-1389 at that time. Please notify me if you would like to change this appointment.

**The Office of Student Conduct and Community Standards will convene a Hearing Panel on Tuesday, June 29, 2021 at 9:00 a.m. EST,** to resolve a matter that allegedly occurred in the early morning hours of Tuesday, January 8, 2019, at Party B's residence of Potluck House, as well as allegations pertaining to April 11, 2019 through February 6, 2020. The hearing will take place via Zoom and the Zoom link will be shared with you via email, closer to the hearing date. Please notify me if you do not plan to attend and participate.

As indicated in the Policy, you must challenge the participation of any hearing panelist prior to the hearing if you believe there is a conflict of interest. The hearing panelists are:

- Amber Griffiths, Associate Dean of Student Affairs and Wellbeing, School of General Studies
- Jeremy Weinberg, Associate Director, Student Conduct and Community Standards
- Louis Ward, Associate Director, Student Conduct and Community Standards

**Any challenge to a panelist must be submitted in writing no later than Thursday, June 17, 2021 at 5:00 p.m.** via our webform, by selecting "Potential Conflict of Interest (GBM Policy and Procedures)" and including an explanation of the conflict. Please note that neither party may engage in any communication outside the process with any of the above-mentioned administrators. The reports they receive will be fully redacted. Only the complete Investigative Report, containing the Factual Summary, Exhibits, Addendum, and the Findings & Analysis will be presented to the Hearing Panel by this office.

In preparation for the hearing, you should review the complete Investigative Report previously provided to you. You may also prepare a written statement in response to the Investigative Report, addressing your agreement or disagreement with the Investigative Team's recommendation. The written statement must be completed by you (not your advisor) and be no more than 10 single-spaced typed pages, using size 12-point Times New Roman font and 1-inch margins. **The written statement must be submitted to the Office no later than Friday, June 25, 2021 at 9:00 a.m. EST.** You may submit your statement online and select "Response to Investigative Report" from the drop-down menu. References to evidence should be made to materials already included in the Investigative Report; no attachments or additional exhibits will be accepted and any submission outside the page limits described above will be redacted. Additionally, statements discussing the impact of the alleged gender-based misconduct or the disciplinary process are provided directly to the Sanctioning Officer, if applicable; they are not considered for the purpose of determining responsibility. Statements submitted for

consideration that include information outside the scope of review by the Hearing Panel will be redacted.

Both parties and the Investigative Team are afforded the opportunity to participate in the hearing. Witnesses are not involved in the hearing process. Each party may have an advisor of their choice accompany him/her to the hearing. Your advisor is not permitted to speak or interject during the hearing, but may request breaks and communicate with you in a non-disruptive manner. Each party may observe the proceedings via video conference.

During the hearing, the Hearing Panel may pose questions to a party and/or the Investigative Team, to better clarify or understand and analyze the Investigative Report. Neither party (nor their respective advisors) will be permitted to submit additional questions at the hearing. Additionally, in the event a student makes a statement containing inaccurate facts or information outside the scope of the Policy, a curative instruction may be given to the Hearing Panel.

Pursuant to the Gender-Based Misconduct Policy and Procedures for Students, relating to hearing procedures, the hearing will proceed as follows:

- Party A's opening statement (up to and no more than 7 minutes)
- Party B's opening statement (up to and no more than 7 minutes)
- Questions by the Panel to Party A (if the Panel deems necessary)
- Questions by the Panel to Party B (if the Panel deems necessary)
- Questions by the Panel to the Investigative Team (if the Panel deems necessary)
- Party A's closing statement (up to and no more than 7 minutes)
- Party B's closing statement (up to and no more than 7 minutes)

Lastly, should you or the other party be found responsible for any Policy violation(s), both parties may provide a written impact statement discussing how the misconduct contained in the Investigative Report has impacted them. This statement must be completed by you, and be no more than 5 single-spaced typed pages, using size 12-point Times New Roman font and 1-inch margins. This statement will only be considered by a Sanctioning Officer if the Hearing Panel returns a finding of responsibility for any of the alleged Policy violations. Please review the Gender-Based Misconduct Policy and Procedures for Students at studentconduct.columbia.edu, for additional information.

If you have any questions or concerns about the schedule or the hearing process, please do not hesitate to contact me. Otherwise, I will speak to you on Tuesday, June 22, 2021 at 10:30 a.m. EST, as detailed above.

Sincerely,


Kevin Pitt
Associate Vice President

CC:    Alyssa Anzalone-Newman, Title IX Investigator
        Kristin Collado, Title IX Investigator
        Jeremy Saland, Attorney-Advisor
        Student File

In summary and for purposes of clarity:

- The hearing will move forward tomorrow morning, at 9:00 a.m. EST, as scheduled. If you opt to not participate, the other party will have the opportunity to request that a hearing not occur and that the Hearing Panel issue its findings based on written materials, including the investigative report, exhibits, the addendum to the factual summary, and any written statements from the parties.
- SCCS is unable to grant you an accommodation in the form of more time to submit your written statement without proper documentation. If you would like to submit such documentation you must do so by Thursday, July 1st at 12:00 p.m. EST. Please send it to Investigators Anzalone-Newman and Collado and to your Case Manager, Adrienne Blount.
- If you choose to submit appropriate documentation of a disability by the July 1st deadline, you must also submit your substantive written statement (for review by the hearing panel) by that same date and time.

Thank you,
Alyssa

See More from Jeremy Salard

**ALYSSA ANZALONE-NEWMAN** | Student Conduct and Community Standards
Title IX Investigator | Columbia University in the City of New York
T: 212-851-2794    F: 212-854-8614

*Confidentiality Notice:* The information (including any attachments) contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) name above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, disclosure, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify me immediately by e-mail, and delete the original message.

Watch "Tea and Consent"
Bystander Intervention
Dating Violence
Reports and Research

Get
Involved

Sexual Respect Ambassadors
Become a Sexual Violence Response Peer Advocate or Peer Educator
Request a Workshop or Training
Presidential Advisory Committee on Sexual Assault

Report an Incident

# COLUMBIA'S NEW INTERIM TITLE IX POLICY AND GENDER-BASED MISCONDUCT POLICY FOR STUDENTS

Home > Columbia's new Interim Title IX Policy and Gender-Based Misconduct Policy for Students

## Frequently Asked Questions: Columbia's new Interim Title IX Policy and Gender-Based Misconduct Policy for Students

### What is Title IX?

Title IX of the Educational Amendments Act of 1972 ("Title IX") is the federal law that prohibits sex discrimination by any educational institution that receives federal funding. This law has been interpreted by courts and the U.S. Department of Education to require colleges and universities to take certain steps to prevent and respond to sexual harassment, sexual assault and other gender-based misconduct.In May 2020 the Department of Education issued new regulations that changed Title IX's application to gender-based misconduct cases in colleges and universities.

### Why does Columbia have an Interim Title IX Policy and a Gender-Based Misconduct Policy?

On May 19, 2020, the U.S. Department of Education issued new regulations under Title IX that:

- Limit Title IX's coverage to certain forms of sexual assault and other gender-based misconduct, including certain misconduct that is "severe, pervasive and objectively offensive." The regulations also limit coverage to misconduct on campus and in similar settings; they exclude misconduct that takes place outside of the United States.

- Set out a detailed process that higher education institutions (including Columbia) must follow when investigating, adjudicating and imposing sanctions in cases involving misconduct under that definition.

These new regulations do not cover all of the types of misconduct or places in which misconduct occurs that Columbia believes must be addressed in keeping with our own commitments to an environment free from gender-based misconduct and our obligations under state and local law.For this reason, the University now has two policies: the Interim Title IX Policy that addresses cases covered by the new regulations, and the Gender-Based Misconduct Policy that addresses gender-based misconduct not covered by the new regulations. Both are included in one document.Columbia also prohibits faculty and staff members from engaging in gender-based misconduct and restricts faculty and staff from engaging in romantic and sexual relationships with undergraduate and graduate students. For more information about these policies, see Equal Opportunity and Affirmative Action.

## How do I report an incident? Do I need to know which policy might apply?

You can make a report online (see the "report an incident" button), in person, by mail, email (titleix@columbia.edu), or phone. You do not need to know which policy might apply. Columbia's Title IX team will handle that.

## What will happen if I make a report?

When a report is made, a Case Manager from Student Conduct and Community Standards will contact you to discuss supportive and interim measures, and explain the processes available under the Gender-Based Misconduct Policy or the Interim Title IX Policy, depending on the nature of the incident(s) you report.

## What are supportive and interim measures?

Supportive and interim measures are designed to support students who may have experienced or be accused of gender-based misconduct. Examples include:

- Relocation of a student's residence;
- Adjusting a student's work schedule for University employment;
- Changing a student's academic schedule;
- Allowing a student to withdraw from or retake a class without penalty; and/or
- Providing access to tutoring or other academic support.

## How does the University resolve reports of Policy violations?

Students will learn about options for resolution in discussion with a case manager or investigator.Depending on the case, options may include administrative resolution, mediation, restorative justice, or investigation and adjudication.

## Will I need an attorney?

You can choose to have an attorney if you are involved in a case that is being investigated and adjudicated under either Policy. You can choose your own attorney-advisor or the University can provide an attorney-advisor at no cost to you. Please see the Policies for details.

## What happens during an investigation and a hearing?

Columbia has two-person teams of investigators who will gather information and ask questions of anyone involved in the case. In some cases, there will also be a "hearing" at which students can speak to a three-member hearing panel about their experiences and respond to questions.In cases under the Interim Title IX Policy, each Party's advisor is permitted to ask the other Party and any witnesses questions that are relevant to the facts in the case. This questioning is called "cross examination." It is monitored by the Hearing Panel Chair and is restricted by rules regarding relevance and rules of decorum designed to create a respectful and fair hearing environment.