**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

                             *Plaintiff*,

          v.

THE TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK; KEVIN PITT;
ALYSSA ANZALONE-NEWMAN; KRISTIN
COLLADO, in their official capacities,

                             *Defendants*.

No. 1:21-cv-05839 (ER)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF <u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Gabrielle E. Tenzer
Kyla P.S. Magun
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
212.763.0883
gtenzer@kaplanhecker.com
kmagun@kaplanhecker.com

February 18, 2022

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.    Plaintiff Misconstrues the Bounds of a Rule 12(b)(6) Motion. ............................. 1

        A.    There Is No Basis to Convert Defendants' Motion into a Motion for Summary
            Judgment. ................................................................................................... 1

        B.    The Court Should Not Accept as True Plaintiff's Contradicted Allegations ............... 3

        C.    The Court Should Not Consider the New Allegations that Plaintiff Has Included Only
            in Her Opposition ....................................................................................... 4

II.    Plaintiff's Title IX Claims Should Be Dismissed. ................................................. 5

        A.    Plaintiff Has Conceded that Her Claims Against the Individual Defendants Should Be
            Dismissed. ................................................................................................. 5

        B.    Plaintiff's "Systemic" Title IX Claim Fails as a Matter of Law .................................. 5

        C.    Plaintiff's Deliberate Indifference Claim Fails as a Matter of Law ............................ 6

        D.    Plaintiff's Erroneous Outcome Claim Fails as a Matter of Law ................................ 13

CONCLUSION ................................................................................................................ 14

APPENDIX ..................................................................................................................... 15

## TABLE OF AUTHORITIES

CASES                                                                                    PAGES

*Albers v. Guardian Life Ins. Co. of Am.*,

  No. 98 Civ. 6244, 1999 WL 228367 (S.D.N.Y. Apr. 19, 1999) ................................................. 2

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,

  671 F.3d 140 (2d Cir. 2011) ........................................................................................ 3

*B.B. v. The New Sch.*,

  No. 17 Civ. 8347, 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018).......................................... 3, 4

*Bailey v. N.Y. L. Sch.*,

  No. 16 Civ. 4283, 2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017) ................................................ 3

*Bailey v. N.Y. L. Sch.*,

  No. 19-3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) ......................................... 7, 9, 10, 12

*Barlow v. Washington*,

  No. 20 Civ. 5186, 2021 WL 2036704 (W.D. Wash. May 21, 2021) ........................................ 12

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,

  369 F.3d 212 (2d Cir. 2004) ........................................................................................ 3

*Camreta v. Greene*,

  563 U.S. 692 (2011) ..................................................................................................... 6

*D'Alessandro v. City of New York*,

  713 F. App'x 1 (2d Cir. 2017)...................................................................................... 4

*Davis v. Monroe Cnty. Bd. of Educ.*,

  526 U.S. 629 (1999) ............................................................................................ 6, 9, 12

*Doe v. NYU*,

  438 F. Supp. 3d 172 (S.D.N.Y. 2020) ...................................................................... 3, 14

*Doe v. Rensselaer Polytechnic Inst.*,

  No. 20. Civ. 1185, 2020 WL 6118492 (N.D.N.Y. Oct. 16, 2020) ............................................ 5

*Doe v. Vassar Coll.*,

  No. 19 Civ. 9601, 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019)................................... 9, 15, 18

*Effie Film, LLC v. Pomerance*,

  909 F. Supp. 2d 273 (S.D.N.Y. 2012) ......................................................................... 4

*Facchetti v. Bridgewater Coll.*,
  175 F. Supp. 3d 627 (W.D. Va. 2016) ................................................................. 10

*Hayut v. State Univ. of N.Y.*,
  352 F.3d 733 (2d Cir. 2003) ................................................................................... 8

*Ipsos-Insight, LLC v. Gessel*,
  No. 21 Civ. 3992, 2021 WL 2784634 (S.D.N.Y. July 2, 2021) ............................. 4

*Karasek v. Regents of Univ. of Cal.*,
  956 F.3d 1093 (9th Cir. 2020) ........................................................................ 10, 11

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
  No. 13 Civ. 2200, 2013 WL 177911 (S.D.N.Y. Jan. 13, 2013) ........................... 6, 8

*Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*,
  No. 11 Civ. 3327, 2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) ................................ 2

*Lau v. Metro. Life Ins. Co.*,
  No. 15 Civ. 09469, 2016 WL 5957687 (S.D.N.Y. Aug. 22, 2016) ......................... 3

*Mariama Amar v. N.Y.C. Health & Hosps. Corp.*,
  No. 14 Civ 2503, 2015 WL 3754999 (S.D.N.Y. June 15, 2015) ............................ 4

*Martinetti v. Mangan*,
  No. 17 Civ. 5484, 2019 WL 1255955 (S.D.N.Y. Mar. 19, 2019) ........................... 8

*McLeod v. Verizon N.Y., Inc.*,
  995 F. Supp. 2d 134 (E.D.N.Y. 2014) .................................................................... 2

*Menaker v. Hofstra Univ.*,
  935 F.3d 20 (2d Cir. 2019) ............................................................................. 13, 14

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220, 231 (2d Cir. 2016) .......................................................................... 2

*Nungesser v. Columbia Univ.*,
  169 F. Supp. 3d 353 (S.D.N.Y. 2016) .................................................................... 7

*Oden v. N. Marianas Coll.*,
  440 F.3d 1085 (9th Cir. 2006) .............................................................................. 10

*Posso v. Niagara Univ.*,
  No. 19 Civ. 1293, 2020 WL 8771334 (W.D.N.Y. Nov. 2, 2020) ......................... 12

*Rodriguez v. McGinnis*,

    1 F. Supp. 2d 244, (S.D.N.Y. 1998) ................................................................................. 4

*Roe v. St. John's Univ.*,

    No. 19 Civ. 4649, 2021 WL 1224895 (E.D.N.Y. Mar. 31, 2021)................................. 7

*Roskin-Frazee v. Columbia Univ.*,

    No. 17 Civ. 2032, 2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018)...................................... 10, 11

*Roth v. Jennings*,

    489 F.3d 499 (2d Cir. 2007) ........................................................................................ 2

*Simpson v. Univ. of Colo. Boulder*,

    500 F.3d 1170 (10th Cir. 2007) ................................................................................... 11

*Squicciarini v. Vill. of Amityville*,

    No. 17 Civ. 6768, 2019 WL 1232093 (E.D.N.Y. Mar. 15, 2019).................................. 2

*Yusuf v. Vassar Coll.*,

    35 F.3d 709 (2d Cir. 1994) .......................................................................................... 13

*Zeno v. Pine Plains Cent. Sch. Dist.*,

    702 F.3d 655 (2d Cir. 2012) ........................................................................................ 14

Defendants respectfully submit this reply memorandum of law in further support of Defendants' Motion to Dismiss the Amended Complaint ("Motion").[1]

## PRELIMINARY STATEMENT

Plaintiff clearly disagrees with the outcome of her Gender Based Misconduct ("GBM") proceeding. But her dissatisfaction with that result does not translate into a valid Title IX claim. Rather, as is evidenced by the very documents that Plaintiff has attached to her Complaint—including, in particular, the Investigative Report—Defendants completed a thorough and unbiased investigation of Plaintiff's GBM complaint in accordance with Title IX and Columbia's GBM Policy. As there is no basis for converting Defendants' Motion into one for summary judgment, the Motion should be treated as a motion to dismiss, and it should be granted.

## ARGUMENT

**I.    Plaintiff Misconstrues the Bounds of a Rule 12(b)(6) Motion.**

**A.    There Is No Basis to Convert Defendants' Motion into a Motion for Summary Judgment.**

In support of this Motion, Defendants submitted a 10-page excerpt of the very same Investigative Report that Plaintiff herself excerpted and attached to her Complaint. *See* Magun Decl. Ex. 1, ECF 49; ECF 12-1 at 62–110 (Compl. Ex. E). Plaintiff contends that by attaching and referencing this small additional portion of the 131-page Investigative Report, Defendants have "invoked conversion [to summary judgment] under Rule 12(d)." Opp'n at 19–21. Not so.

Where, as here, a plaintiff "excerpted . . . portions" of a document and included them as part of the complaint, a court is "permitted to consider the document in its entirety because the

---

[1]    Capitalized and abbreviated terms have the same meaning as in Defendants' opening brief ("Br.," ECF 47). References to "¶ _" are to paragraphs of the Amended Complaint (ECF 12). References to "Opp'n" are to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF 65). Page references are consistent in formatting with Defendants' opening brief. *See* Br. at 2 n.2 & 7 n.7.

[c]omplaint incorporates the [entire document] by reference." *Albers v. Guardian Life Ins. Co. of Am.*, No. 98 Civ. 6244, 1999 WL 228367, at *1 n.2 (S.D.N.Y. Apr. 19, 1999) (Chin, J.) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *see also, e.g.*, *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 139 (E.D.N.Y. 2014) (Spatt, J.). Indeed, courts emphasize that a document is integral to the complaint and therefore may be considered on a Rule 12(b)(6) motion where, as here, the document "for some reason—usually because the document, *read in its entirety*, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Squicciarini v. Vill. of Amityville*, No. 17 Civ. 6768, 2019 WL 1232093, at *4 (E.D.N.Y. Mar. 15, 2019) (Hurley, J.) (emphasis added) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016)), *adhered to on recon.*, 2019 WL 2191371 (E.D.N.Y. May 21, 2019).[2]

Although Plaintiff chose to attach only a select portion of the Investigative Report to her Complaint, the remainder of the Investigative Report is not, as Plaintiff contends, "extra-pleading material." Opp'n at 3. Indeed, Plaintiff herself quotes from parts of the Investigative Report that she did not attach to the Complaint. *See, e.g.*, ¶ 162 (admittedly quoting from the "witness section" of the report); *see also* Br. at 7 n.6. Because the entire Investigative Report is incorporated by reference and integral to the Complaint, Defendants' submission of a few additional pages in no way triggers conversion of this Motion to one for summary judgment. *See Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11 Civ. 3327, 2013 WL 417406, at *6–8 (S.D.N.Y. Feb. 4, 2013) (Ramos, J.) (declining to convert a motion under Rule 12(d) where documents submitted with the defendants' motion were "incorporated by reference because [they were]

---

[2]   To be sure, a court need not consider the contents of a document that a plaintiff successfully alleges is inauthentic or fraudulent. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). But Plaintiff cannot credibly make any such allegation here, *see* Opp'n at 22, where Plaintiff does not and cannot dispute that the Investigative Report she relies upon and attaches (in part) to her Complaint is the actual report produced by the Investigative Team in her underlying GBM proceeding. *See, e.g.*, ¶¶ 115–116, 119, 121, 124, 159, 203–04.

specifically referenced in the Complaint on multiple occasions").

### B.    The Court Should Not Accept as True Plaintiff's Contradicted Allegations.

Plaintiff mistakenly asserts that Defendants do not accept as true the allegations in her

Complaint, as they must on a Rule 12(b)(6) motion. Opp'n at 22. But Defendants only do so in the

limited, and permissible, circumstance where Plaintiff's allegations are contradicted by the

documents she attached to her Complaint. *See, e.g.*, *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671

F.3d 140, 147 (2d Cir. 2011) ("[W]here a conclusory allegation in the complaint is contradicted

by a document attached to the complaint, the document controls and the allegation is not accepted

as true."); *Lau v. Metro. Life Ins. Co.*, No. 15 Civ. 09469, 2016 WL 5957687, at *1 (S.D.N.Y.

Aug. 22, 2016) (Castel, J.) (same); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood

Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004); Br. at 12, 18–19. Indeed, in

Title IX cases with circumstances akin to those present here, courts have declined to credit

allegations that conflict with attached or incorporated documents (including investigative reports)

and dismissed the underlying claims. *See, e.g.*, *Bailey v. N.Y. L. Sch.*, No. 16 Civ. 4283, 2017 WL

6611582, at *9 (S.D.N.Y. Dec. 27, 2017) (Ramos, J.), *aff'd*, No. 19-3473, 2021 WL 5500078 (2d

Cir. Nov. 24, 2021); *B.B. v. The New Sch.*, No. 17 Civ. 8347, 2018 WL 2316342, at *5–7 (S.D.N.Y.

Apr. 30, 2018) (Torres, J.); *Doe v. NYU*, 438 F. Supp. 3d 172, 184 (S.D.N.Y. 2020) (Carter, J.).

Plaintiff argues that because her opposition "explains" the conflict between certain of her

allegations and the exhibits to her own Complaint, the Court must accept her allegations as true.

*See* Opp'n at 14–15, 22. Putting aside whether she has explained these conflicts, which she has

not, Plaintiff misreads the law.[3] In *B.B. v. The New School*, the court found that allegations

---

[3]    She also misquotes it. Specifically, some of the language that Plaintiff claims is quoted from *B.B.* is nowhere to be found in that opinion. *Compare* Opp'n at 15, 22 ("[A] court's job does not end just because a movant asserts a document incorporated by reference contradicts the allegations contained in the complaint. Instead, a court must review the plaintiff's complaint and opposition papers to determine whether an explanation for the contradiction

contradicted by documents attached to or quoted in the complaint were implausible. 2018 WL 2316342, at *5–7. While recognizing that the plaintiff offered no explanation for the contradiction, the court in *B.B.* did not hold, as Plaintiff suggests, that simply providing any explanation would necessarily render a contradicted allegation plausible. *See id.* at *6. Moreover, Plaintiff's purported explanations cannot erase the clear contradictions that exist between her allegations and the documents attached to her Complaint. *See* Appendix.

### C.    The Court Should Not Consider the New Allegations that Plaintiff Has Included Only in Her Opposition.

"[I]t is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss." *Ipsos-Insight, LLC v. Gessel*, No. 21 Civ. 3992, 2021 WL 2784634, at *9 n.7 (S.D.N.Y. July 2, 2021) (Furman, J.) (internal quotation marks omitted); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 11 n.12 (2d Cir. 2017). In her opposition, however, Plaintiff incorporates a host of new allegations, including, by way of example only, allegations with respect to the underlying incident with Roe, Opp'n at 6–7; her alleged "fawn" response, *id.* at 9–11; Roe's prior GBM proceeding, *id.* at 12–13; and an entirely separate civil litigation, *id.* at 35.[4] While a court is "permit[ted]" to consider a *pro se* plaintiff's allegations made for the first time in an opposition when they are "consistent with the complaint," *Mariama Amar v. N.Y.C. Health & Hosps. Corp.*, No. 14 Civ 2503, 2015 WL 3754999, at *5 (S.D.N.Y. June 15, 2015) (Ramos, J.) (quoting *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y. 1998)), the Court is not

---

exists or whether the plaintiff has cast doubt on the authenticity or veracity of the documents."), *with B.B.*, 2018 WL 2316342, at *6 ("Here, Plaintiff offers no explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the exhibits. Nor does Plaintiff cast doubt on the authenticity or veracity of these documents. Accordingly, because those contradicted allegations are implausible, they will not defeat a motion to dismiss.").

[4]    In describing the "fawn" response and other trauma responses in her opposition, Plaintiff relies on materials outside the four corners of the Complaint, *see* Opp'n at 9–11, 7 n.7, 8 n.8, 9 n. 9 & 11, 13 n.12, 38 n.15, 39 n.16, which this Court cannot consider for their truth on a motion to dismiss. *See, e.g., Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012) (Oetken, J.).

required to do so. Nor should it where, as here, Plaintiff's new allegations are conclusory or inflammatory and unsupported, and therefore deserve no weight.[5] For reasons already addressed, *see* ECF 59, this Court should also disregard the new allegations in Plaintiff's opposition that are based on confidential information obtained in a different proceeding pursuant to a protective order that prohibits use of that confidential information here, *see* Opp'n at 12–13, 35.

In any event, even if the Court were to consider any or all of Plaintiff's new allegations in her opposition, which it should not, Plaintiff's claims would still fail. For the reasons stated below and in Defendants' opening brief, none of these new allegations are sufficient to salvage Plaintiff's Title IX claims.

## II.    Plaintiff's Title IX Claims Should Be Dismissed.

### A.    Plaintiff Has Conceded that Her Claims Against the Individual Defendants Should Be Dismissed.

Plaintiff agrees that "[t]echnically, this action has only one defendant, Columbia." *Id.* at 26. For this reason, and because Title IX claims cannot be brought against individuals in any capacity—official or otherwise, *see* Br. at 13, the claims against the Individual Defendants should be dismissed.

### B.    Plaintiff's "Systemic" Title IX Claim Fails as a Matter of Law.

Plaintiff does not, and cannot, address her failure to allege that Columbia's application of its 2019 GBM Policy to her 2019 GBM complaint had anything to do with her gender. *See id.* at 26–27. Her "systemic" Title IX claim fails on this ground alone. *See* Br. at 13–15. Additionally, the court's decision in *Doe v. Rensselaer Polytechnic Institute*, No. 20. Civ. 1185, 2020 WL 6118492 (N.D.N.Y. Oct. 16, 2020), provides no assistance to Plaintiff, *see* Br. at 14–15, nor is it

---

[5]    *See, e.g.,* Opp'n at 12 (allegation about GBM staff turnover to "evade discovery"); *id.* at 12, 34, 37 (allegations that Defendants "falsified" and "fabricated" evidence); *id.* at 36, 37 (allegations that Defendants are "charlatans").

binding on this Court, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

### C. Plaintiff's Deliberate Indifference Claim Fails as a Matter of Law.

As this Court has acknowledged, deliberate indifference "must, 'at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.'" *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 12 Civ. 2200, 2013 WL 177911, at *6 (S.D.N.Y. Jan. 13, 2013) (Ramos, J.) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999)), *aff'd*, 531 F. App'x 132 (2d Cir. 2013). Here, the Investigative Report demonstrates how, upon receiving Plaintiff's GBM complaint, Columbia immediately put a No-Contact Directive in place and commenced a thorough investigation. ECF 49 at 4; ECF 12-1 at 62–110. Indeed, at no point does Plaintiff allege in anything more than a conclusory fashion that she somehow suffered harassment or was made more vulnerable to harassment due to Columbia's response to her GBM complaint. Nor can she. Put another way, "[t]here are no facts alleged in the complaint tending to show that [Columbia's] response effectively caused the complained-of discrimination." *Id.* at *7 (internal quotation marks omitted). In any event, as discussed below, Plaintiff fails to plausibly allege two of the requisite prongs of a deliberate indifference claim: (1) loss of educational opportunities or benefits; and (2) a response that was "clearly unreasonable in light of the known circumstances." Br. at 15 (quoting *Davis*, 526 U.S. at 648). Failure to plead either prong is sufficient to defeat Plaintiff's claim.

#### 1. Plaintiff Fails to Allege that She Was Denied Educational Opportunities.

Acknowledging her omission, and disregarding well-established Supreme Court precedent, Plaintiff contends that she "is not required to expressly allege 'loss of educational opportunities or benefits'" to plead a deliberate indifference claim. Opp'n at 27 (purportedly quoting *Davis*, 526 U.S. at 652). But that is simply not the case. *See, e.g.*, *Davis*, 526 U.S. at 652 (declining to hold

that an explicit allegation of a "mere decline in grades is enough to survive a motion to dismiss" a deliberate indifference claim (internal quotation marks omitted)); *Roe v. St. John's Univ.*, No. 19 Civ. 4649, 2021 WL 1224895, at *20–21 (E.D.N.Y. Mar. 31, 2021) (Chen, J.) (dismissing deliberate indifference claim where plaintiff failed to allege he "ever missed class, altered his study habits, or was otherwise unable to access educational opportunities" as a result of alleged misconduct (internal quotation marks omitted)); *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 368 (S.D.N.Y. 2016) (Woods, J.) (dismissing deliberate indifference claim because "Nungesser's conclusory assertions that his academic performance suffered and that he was prevented from attending recruiting events, without more, do not suffice"); *see also* Br. at 16 (citing cases). Plaintiff's deliberate indifference claim fails for this reason alone.

### 2. Plaintiff Fails to Allege that Columbia's Actions Were "Clearly Unreasonable."

Plaintiff's claim fails for the additional reason that, as set forth below, she has not plausibly alleged a clearly unreasonable response on the part of Columbia:

***Use of Evidence.*** *First*, Plaintiff reiterates her complaint that it is "clearly unreasonable" for Defendants to have excluded her medical records as exhibits to the Investigative Report, which she now claims for the first time "deprived her of [*sic*] opportunity to challenge the finding based on her medical records in [*sic*] later stage." Opp'n at 28; *see also id.* at 31. But Plaintiff does nothing to explain how the Investigative Team's process—which, consistent with the GBM Policy, included reviewing *all* of the records Plaintiff provided, determining which evidence was relevant to the investigation, and attaching as exhibits those documents explicitly relied upon in drafting the Investigative Report—could possibly rise to the level of deliberate indifference. *See* Br. at 18– 19 (citing ECF 49 at 4 n.4); *see also Bailey v. N.Y. L. Sch.*, No. 19-3473, 2021 WL 5500078, at *3 (2d Cir. Nov. 24, 2021) (Second Circuit has found a "school's response to a complaint was

7

adequate where the evidence showed that the defendants 'responded to [plaintiff's] complaint . . . in accordance with all applicable procedures'" (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 751 (2d Cir. 2003)). Moreover, Plaintiff was not, and could not be, deprived of any opportunities in a "later stage" because nothing prevented Plaintiff from challenging the purported exclusion of her medical records as exhibits to the Investigative Report as part of the appeal process afforded by Columbia's GBM Policy. *See* ECF 12-1 at 47 (appeal may be based on allegation of "procedural error").

*Second*, Plaintiff now argues for the first time in her opposition that it was "clearly unreasonable" for Defendants not to have considered "*possibilities* beyond how [she] framed the events," such as that her "memory [or] perception might have been impaired due to [] stress." Opp'n at 28 (emphasis added). But it cannot be "clearly unreasonable" for the Investigative Team to have refrained from pure speculation. *See, e.g.*, *Martinetti v. Mangan*, No. 17 Civ. 5484, 2019 WL 1255955, at *4–5 (S.D.N.Y. Mar. 19, 2019) (Karas, J.) (holding that plaintiff's desire for a "more expansive" investigation did not serve as the basis for a deliberate indifference claim); *KF*, 2013 WL 177911, at *7 (educational institutions "retain broad flexibility" as to how they respond to Title IX complaints).

*Third*, Plaintiff contends that it was "clearly unreasonable," after seeing all the evidence, for the Investigative Team to have "consider[ed] the possibility that Roe is innocent" and to have concluded that his "fear of [*sic*] Title IX process indicated more of his innocence than his culpability." Opp'n at 28 (emphasis omitted). Such contentions are nothing more than Plaintiff's disagreement with the outcome of the investigation, which does not give rise to a deliberate indifference claim.[6] *See, e.g.*, *KF*, 2013 WL 177911, at *7 (Title IX does not give victims a right

---

[6]    Moreover, the Investigative Team considered Roe's fear of the Title IX process with respect to his *credibility*. Specifically, while the Investigative Team noted in the report that Roe's responses gave the "impression" that he

to "make particular remedial demands" (quoting *Davis*, 526 U.S. at 648)); *Doe v. Vassar Coll.*, No. 19 Civ. 9601, 2019 WL 6222918, at *8 (S.D.N.Y. Nov. 21, 2019) (Román, J.) (noting on a preliminary injunction motion that a district court cannot "second-guess a university's credibility determinations and overall evaluation of the evidence"); Br. at 17–18 (citing cases holding that disagreement with university procedures and decisions does not constitute deliberate indifference).

*Use of Witness Testimony.* Plaintiff also appears to suggest that Defendants were "clearly unreasonable" by (i) not interviewing a GHAP "peer support," (ii) not permitting the NYPD detective, Witness #1, to participate at the hearing, and (iii) not permitting cross examination at the hearing.[7] Opp'n at 31. *First*, the GBM Policy is clear that the "Investigative Team has the discretion to . . . determine that certain witnesses . . . should be included or excluded." ECF 12-1 at 35. And here, the Investigative Report specifies that the "Investigative Team did not interview this peer advisor as GHAP is a confidential resource, and the Team does not typically interview providers of such resources through its investigative process." *Id.* at 75 n.48. *Second*, with respect to the NYPD detective, under the GBM Policy, "[w]itnesses are not involved in the hearing process" in any way. *Id.* at 42. And *third*, also under the GBM Policy, only the Hearing Panel may ask questions of the parties and/or the Investigative Team; the parties are not permitted to ask or submit questions. *Id.*; *see also Bailey*, 2021 WL 5500078, at *3 (finding school's response to a complaint adequate when conducted in accordance with applicable procedures).

*Application of 2019 GBM Policy.* Plaintiff's suggestion that using the 2019 GBM Policy

---

had a "script" to which he was trying to "adhere," ECF 12-1 at 80, they also recognized that Roe was "[v]ery fearful of both the investigative process and the potential outcome, and as a result, was making a strong effort to be prepared for anything that might be asked of him," *id.* at 80–81. Overall, the Investigative Team found that Roe's "significant consistency throughout the investigation . . . did not detract from his overall *credibility*." *Id.* at 81 (emphasis added).

[7] The hearing never occurred because Roe opted to proceed without one after Plaintiff failed to attend. Opp'n at 13; ECF 12-1 at 118; Br. at 9.

in her proceeding somehow constituted deliberate indifference is just a repackaging of her "systemic" Title IX claim, and it fails for all of the same reasons. *See* Br. at 17–18; *supra* at 5–6. Moreover, given the robust investigative and adjudicative processes afforded to all students under the 2019 GBM Policy, *see* ECF 12-1 at 1–56, its use here does not suggest deliberate indifference in any way. *See* Br. at 17–18.

 ***Timeliness of Investigation.*** Plaintiff claims to have alleged a deliberate indifference claim based on the conclusory contention of an "unjustified delay" in her GBM investigation. Opp'n at 31. But Plaintiff has not sufficiently alleged that any supposed delay by Columbia was in any way unjustified, "fall[ing] short of Title IX's clearly unreasonable standard." *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032, 2018 WL 6523721, at *9 (S.D.N.Y. Nov. 26, 2018) (Daniels, J.); *see also, e.g.*, *Bailey*, 2021 WL 5500078, at *3 (affirming dismissal of Title IX deliberate indifference claim based on allegations of an "untimely" investigation when school began investigation in less than a week); *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1110 (9th Cir. 2020*) (thirteen months between Title IX complaint and resolution did not constitute deliberate indifference); *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (finding no triable issue of fact on deliberate indifference where there was no evidence that the delay in the Title IX proceeding was more than "negligent, lazy, or careless" or the result of a "deliberate attempt to sabotage [p]laintiff's complaint or its orderly resolution"); *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 638 (W.D. Va. 2016) (finding "there is ample authority holding that neither a school's negligence in addressing a sexual assault, nor its failure to provide the remedy wanted by the victim, constitutes deliberate indifference under Title IX" and collecting cases).

 Here, after Plaintiff made her incident report to the GBM Office, Defendants took immediate action, instituting a No-Contact Directive between the parties and commencing an

investigation within just three days. ECF 49 at 4–5. The overall length of the investigation was the result of, among other things, a cross-complaint filed by Roe, ¶ 108; numerous interviews of multiple witnesses, ECF 49 at 7–8; a substantial record, including a "significant volume" of electronic communications, *id* at 7; and a global pandemic which required the Investigative Team to conduct portions of the investigation remotely. Given Columbia's prompt response and subsequent efforts to investigate Plaintiff's complaint and Roe's cross-complaint, culminating in a 131-page Investigative Report, Plaintiff cannot plausibly allege any "unjustified delay" rising to the level of deliberate indifference.

***Permitting Roe to Return to Campus.*** Finally, Plaintiff appears to raise what could be characterized as a pre-assault liability claim based on Roe's prior Title IX case and resulting suspension. Opp'n at 29–31. Courts recognizing pre-assault liability claims generally do so in the limited circumstance where the school maintains what amounts to a policy of deliberate indifference to reports of sexual misconduct, as the cases cited in Plaintiff's opposition make clear.[8] *See, e.g.*, *Karasek*, 956 F.3d 1113–14 (vacating dismissal of pre-assault Title IX claim and remanding to district court where, among other things, an auditor found that the university had "'resolved 76 percent of Title IX complaints from students using the early resolution process' in a generally inadequate manner" (citation omitted)); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1173 (10th Cir. 2007) (overturning grant of summary judgment dismissing plaintiff's pre-assault Title IX claim where there was a long history—more than ten years—of sexual assaults and rapes related to a university-sanctioned and funded football recruiting program in which female students known as "ambassadors" were paired with male football recruits and asked to

---

[8]     The Second Circuit has yet to address a pre-assault liability claim.  *See, e.g.*, *Roskin-Frazee*, 2018 WL 6523721, at *5 & n.2.

show them a "good time," without any supervision); *Posso v. Niagara Univ.*, No. 19 Civ. 1293, 2020 WL 8771334, at *6 (W.D.N.Y. Nov. 2, 2020), *report and recommendation adopted*, 518 F. Supp. 3d 688 (W.D.N.Y. 2021) (denying motion to dismiss pre-assault Title IX claim where the plaintiff alleged that her assailant was a member of the swimming and diving team, which "had a known history of sexual harassment, akin to the situation in *Simpson*," that university officials were aware of for years but failed to address).[9]

Of course, allegations that a university ignored years of egregious and systemic misconduct are a far cry from Plaintiff's allegation concerning Roe's return to campus after Columbia investigated and sanctioned him for a prior violation in accordance with Columbia's GBM policy.[10] As the Supreme Court stated in *Davis*, "We stress that our conclusion here . . . does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." 526 U.S. at 648; *see also, e.g.*, *id.* (confirming that Title IX does not "require funding recipients to 'remedy' peer harassment" or "'ensur[e] that . . . students conform their conduct to' certain rules" (citation omitted)); *Bailey*, 2021 WL 5500078, at *3 ("When considering the adequacy of a response, 'a court must accord sufficient deference to the decisions of school disciplinarians.'" (quoting *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012)); *Barlow v. Washington*, No. 20 Civ. 5186, 2021 WL 2036704, at *1–2, *4–5 (W.D. Wash. May 21, 2021) (granting summary judgment for the university, finding that the decision to temporarily suspend a student for prior sexual misconduct was "not clearly unreasonable" and "did not create an obvious risk of assault"

---

[9]   While Plaintiff never cites to it in her brief, she appears to be quoting from *Posso*. *See* Opp'n at 29–30. Defendants have identified at least one other similar discrepancy in Plaintiff's brief. *See supra* at 3 n.3.

[10]   Although Plaintiff alleges for the first time in her opposition that Roe's sanction in his prior GBM proceeding was modified from expulsion to suspension, *see* Opp'n at 31, she makes no such allegation in her Complaint and Defendants are not aware of any such modification.

amounting to deliberate indifference, when the same student subsequently sexually assaulted the plaintiff), *appeal filed*, No. 21-35397 (9th Cir. May 25, 2021).

### D.    Plaintiff's Erroneous Outcome Claim Fails as a Matter of Law.

#### 1.    Plaintiff Cannot Bring an Erroneous Outcome Claim.

Tacitly acknowledging that an erroneous outcome claim is unavailable to her as a matter of law, *see* Br. at 20, Plaintiff attempts to shoehorn her claim within the parameters of *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994), by asserting that she "was innocent and wrongly found to have committed an offense" when she was found not to be entirely credible by the Investigative Team. *See* Opp'n at 32; *see also id.* at 18. Of course, a credibility determination— even a determination that credibility is lacking—is by no means a finding of having "committed an offense," and therefore falls far outside the scope of an erroneous outcome claim. Nor is the "presumption of innocence" applied to respondents pursuant to the 2020 Title IX Rule any justification for expanding the scope of an erroneous outcome claim to include determinations of complainants' credibility, which seems to be what Plaintiff is advocating in her opposition. *See id.* at 32. This is particularly so where, as here, the 2020 Title IX Rule was not applied in the underlying GBM proceeding.

#### 2.    Plaintiff Fails to Allege Clear Irregularities in the Process.

Even if Plaintiff could bring an erroneous outcome claim, which she cannot, Plaintiff's opposition in no way salvages her failure to plausibly allege a "clearly irregular investigative or adjudicative process" sufficient to establish gender bias, *see Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019), let alone that such bias resulted in an erroneous outcome here, *see Yusuf*, 35 F.3d at 715; *see also* Br. at 21–24.

Plaintiff's chart of purported irregularities is a flawed attempt to provide support for her claim. *See* Opp'n at 33–39. Some of the allegations included in Plaintiff's chart are entirely new

and appear nowhere in her Complaint. Others simply restate purported irregularities that Defendants already addressed in their opening brief. *See* Br. at 21–24. And yet others are merely attempts to recast old allegations in a new light. Defendants have reproduced and annotated Plaintiff's chart to further illustrate these points and demonstrate how each of Plaintiff's alleged irregularities is not at all "clearly irregular." *See* Appendix.

### 3.    Plaintiff Fails to Allege a Minimal Plausible Inference of Gender Bias.

Finally, Plaintiff's allegations that gender was a "motivating factor" in the Investigative Team's findings remain wholly conclusory. *See* Br. at 24–25. Her sole rebuttal is that "[l]itigation exposure regarding anti-male allegation [*sic*] can certainly have more impact than 'public criticism.'" Opp'n at 39–40 (quoting *Doe v. NYU*, 438 F. Supp. at 172). But Plaintiff cites no decision supporting the proposition that "litigation exposure" from a single case is sufficient to establish the minimal plausible inference of gender bias necessary to plead a Title IX claim. *Cf. Menaker*, 935 F.3d at 33.

### CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, Defendants respectfully request that the Court grant this Motion in its entirety and with prejudice.

Dated: February 18, 2022                  Respectfully submitted,

By:    _____
Gabrielle E. Tenzer
Kyla P.S. Magun
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
212.763.0883
gtenzer@kaplanhecker.com
kmagun@kaplanhecker.com

*Attorneys for Defendants*

14

**APPENDIX**

The left-hand and middle columns of the below chart are reproduced from Plaintiff's brief. Opp'n at 33–39. The right-hand column of the below chart (in red) has been added by Defendants.

| Compl. ¶ | Procedural irregularities and "Patterns of decision-making that also tend to show the influence of gender" *Yusuf*, 35 F.3d at 715 | Basis for No Clear Irregularity |
|---|---|---|
| 12 at 86-101, 145-146,<br><br><br>12-1,<br>page 76 | The pro bono counsel Columbia assigned to Plaintiff in September 2019 has done plaintiff nothing but a disservice, vicariously aiding John Roe to be found "not responsible" at Title IX process. Moreover, this counsel breached attorney-client privileges in principle with plaintiff, attempted to temper witnesses, and helped Columbia avoiding public exposure of the sexual assaults cases on campus by jeopardizing her sexual assault case at criminal process and discouraging her from filing a civil complaint.<br>(a)Assuming Columbia did not falsify the witness/NYPD detective's testimonial, this pro bono counsel then should not have provided this detective's contact information to the investigators because she was supposed to act in plaintiff's best interest by only giving out evidence (with plaintiff's consent of course) that would help establish plaintiff's sexual assault case.<br>(b)Or, assuming this counsel did not jeopardize plaintiff's Title IX case and only provided this detective's contact info to Columbia because she believed his testimonials could help plaintiff's case (although never sought plaintiff's permission), that means Columbia must have later altered/falsified this detective's testimonial.<br>Whichever of the above possibilities is the case, it's undoubtedly that this pro bono counsel disclosed plaintiff's information without her consent and highly likely had been *the extension of Columbia's Title IX Investigative Team*. | *See supra* at 4–5 (new allegations should not be considered); *see also* Br. at 24 n.13; ECF 12-1 at 76 (analysis of Witness #1 testimony); *id.* at 35 (investigator discretion to choose witnesses). |
| Distort ghap record<br><br><br>12 at 71- | The fact that the NYPD detective (to whom plaintiff consciously reported her sexual assault case) would become the witness testify against plaintiff regarding the alleged incident is odd on its face. According to Columbia, plaintiff first told a peer counsel at GHAP and made false accusation against John Roe; she then went to the police to tell the detective that she had consensual sex with John Roe but a school counsel said it was non-consensual and asked her to report it to the police. It's clearly implausible and logically incoherent that plaintiff would tell the detective the sex was consensual if she intended to make false accusation, there was also no need to mention the school counsel at all because she | *See Doe v. Vassar Coll.*, 2019 WL 6222918, at *8; *supra* at 9 (discussing hearing policies); ECF 12-1 at 35 (investigator discretion to choose |

| | | |
|---|---|---|
| 74, 168<br><br>12-1 at 114 | could just tell the detective a less complicated and more "convincing" version of story.<br>On the other hand, it's against Columbia's own internal policy and code of ethics that employees within Columbia Health give direct advice to visitors regarding their sexual experience. It was Plaintiff's informed decision to report the incident to police of her own volition.<br>When plaintiff received the full investigative report in April 2021 and saw this detective's witness testimonial, she told Defendant Pitt that it's unlikely that this detective would say plaintiff told him the sex was consensual, because she clearly remembered after she recounted the incident, the detective identified the sex was non-consensual to her based on specific sexual acts.<br>Defendant Pitt then notified Plaintiff that a hearing will be scheduled for appeal,but no witness is not allowed to participate. Despite the "obvious need" to hold a cross-examination with all witness's participation at a live hearing. | witnesses); *id.* at 41–44 (hearing procedures including no cross-examination); *id.* at 89–90 (evaluation of Witness #1 credibility). |
| 12 at 145-146, 147-149<br><br>12-1, page 80 | John Roe did not file any cross-complaint at federal court—i.e., defamation, assault, staling, emotional distress in response to plaintiff's civil complaint as he did at the Title IX proceeding (cross-complaint of online stalking), with the same individual as his counsel at both proceedings.<br>Columbia voluntarily reached out the detective from the criminal proceeding and produced exculpatory statements (contradicted to plaintiff's actual experience) as exhibits to the report; but Defendants did not voluntarily retrieve the public civil litigation regarding the same incident and refused to do so when plaintiff provided them such inculpatory evidence. | *See* Br. at 23 (investigator discretion regarding evidence); ECF 12-1 at 35 (investigator discretion regarding witnesses). |
| 12 at 102-105, 106-107<br><br>Case 1:19-cv-04327-VEC | The pace/timeline of plaintiff's Title IX process from August 2019 to July 2021 was contingent with the case update of *Feibleman v. Columbia Uni.*: when the opposition to motion to dismiss was filed on 8/30/2019, Columbia immediately started to evade discovery from replacing then-AVP of the GBM office, Jeri Henry, in Sep 2019 and other employees later. The complete staff turnover wasn't until Dec 2019. (This is why Plaintiff had to name Kevin Pitt as Defendant)<br>Also, the Policy in place at the time of January 8 incident was supposed to be used for plaintiff's case if Columbia intended to follow OCR guidance, but that January 8 Policy was permanently removed shortly after initiation of *Feibleman*. | *See supra* at 4–5 & n.5 (new allegations should not be considered); *id.* at 5, 10 (2019 GBM Policy appropriate); Br. at 17–18. |
| 12 at 110-112<br><br>12-1 at 104 | Investigators "requested from Plaintiff" STI test results but "failed to request such STI testing results from John Roe."<br>The integrity and authenticity of the investigative report is currently being disputed as the ground for this action, therefore this matter should be determined during discovery, | *See supra* at 2 n.2 (no credible dispute of authenticity); Br. at 22 |

| | not at pleading stage.<br>Notwithstanding, there was an "obvious need" that they should request John Roe's STI results because he said he got tested negative and STI can be an indication of non-consensual unprotected sex, but the team never required such corroboration. **[REDACTED]** | (discussing STI request). |
|---|---|---|
| 12 at 113-114 | Investigators requested "Plaintiff's all available mental health records," but "never requested any mental health records from John Roe" and "excluded information concerning John Roe's mental condition." | *See supra* at 2 n.2 (no dispute of authenticity); Br. at 22 (discussing mental health records). |
| | The integrity and authenticity of the investigative report is currently being disputed as the ground for this action, therefore this matter should be determined during discovery, not at pleading stage. | |
| 12 at 115-116 | Investigators included "Plaintiff's response to the New York City Police Department ("NYPD") detective in the regarding the alleged sexual assault" but "excluded John Roe or his attorney's response." | *See* Br. at 22 (discussing Witness #1 interview and credibility). |
| | The NYPD detective interviewed John Roe's attorney multiple times after one time interview with plaintiff in August 2019. However, Columbia excluded John Roe's responses to plaintiff's allegation at criminal proceeding. John Roe's response is important because no matter how plaintiff presented herself during the NYPD interview, John Roe's response to her allegation could shed light on her credibility. | |
| 12 at 117-118, 159 | The investigators excluded the specification (contained in parties 'submission) of the mental health condition John Roe "plan to seek professional help with", a mental condition that predisposes one to sexual recidivism. | *See supra* at 4–5 (new allegations should not be considered); Br. at 18–19, 22 (use of evidence and mental health records); ECF 12-1 at 37 (generally no consideration of sexual history); *id.* at 99–100 (discussing incapacitation analysis and considering Plaintiff's |
| 12-1, page 69 of 123, 2nd and 3rd paras., footnote 43 | They also erred in concluding how plaintiff's pre-existing condition manifested in her interaction with John Roe, that she only had difficulty understanding John Roe's intention after the incident. It's improper to conclude one has difficulty forming healthy relationships in general without knowing one's social life, because the same mental illness can affect individuals differently. These charlatans never even asked plaintiff about her sexual relationships with people other than John Roe. | |
| 12 at 193 | In plaintiff's testimonials submitted to Defendant Pitt, she identified other peer students who once romantically and sexually involved with John Roe and all ended up emotionally traumatized and unstable, as a result, John Roe was advised by his male friends and his female ex to seek professional help for his implied NPD-a mental condition commonly seen in domestic abusers and sexual recidivists. However, Defendant Pitt deflected this characterization onto plaintiff and concluded it was plaintiff's mental condition subjected her to abuse | |

| | others/John Roe. | mental health). |
|---|---|---|
| 12-1 at 69-70, 78 | Defendant Pitt's finding of plaintiff being "not credible" heavily relied on her correspondence with John Roe after the incident.<br>For those positive dynamics she had with John Roe, Defendant Pitt concluded that plaintiff must have "lingering romantic interest" to John Roe therefore the alleged incident can't be sexual assault.<br>However, for those negative dynamic between her and John Roe, such as plaintiff urged him *one time* to seek professional help for his implied NPD [in case he rapes additional people] otherwise plaintiff would report him to school, Defendant Pitt concluded that plaintiff's "clear resentment" showed motive to cause John Roe harm and thus the sexual assault allegation must be false.Defendants' finding [of plaintiff being 'not credible'] is predetermined and clearly biased. | *See Doe v. Vassar Coll.*, 2019 WL 6222918, at *8; Br. at 7–8, 23 (describing credibility assessment); ECF 12-1 at 65–80 (Plaintiff's credibility assessment). |
| 12 at 119-120, 204-205<br><br>12-1 at 116, 110 | Plaintiff never contended that settlement in civil litigation constitutes violation of No-Contact Directive. She was alleging Columbia's discriminatory treatment of parties' reporting each other of No-Contact Directive, that it failed to include plaintiff's reporting but only include John Roe's reporting of her. Another thing is, although Columbia told plaintiff settlement (in whatever condition) does not constitute violation of No-Contact, but John Roe's attorney was refrained from bringing the pending Title IX case to settlement discussion in the civil litigation. | *See supra* at 4–5 (new allegations should not be considered); Br. at 22–23 (discussing NCD). |
| 12 at 121, 124<br><br>12-1, page 83 | Defendant Pitt sycophantically used language like "candor, frankness, upfront" for John Roe's blatant recounting his pervious assault case, although such information was already available to them (GBM office retains all records of past Title IX cases and John Roe knew this), "positively impacted their view of John Roe's credibility"<br>However, Defendant Pitt didn't acknowledge plaintiff's candor for sharing her involuntary bodily reaction to the non-consensual sexual acts by John Roe, or for sharing her ambivalent feeling to John Roe after the incident. That information would not be available to them if plaintiff chose not to disclose, despite the anticipated confusion and common misconception of sexual assault. Instead, the investigators chose to rely on common misconception and used plaintiff's honesty against her. Its own 2019 GBM Policy also clearly defined that physical reaction is irrelevant in determining sexual assault. | *See Doe v. Vassar Coll.*, 2019 WL 6222918, at *8; Br. at 7–8, 23 (describing credibility assessment); ECF 12-1 at 67–68 (recognizing Plaintiff as "forthcoming" in describing the incident); 65–89 (credibility assessment of both parties). |
| 12 at | Columbia potentially fabricated and excluded those specified | *See supra* at 5 |

| | | |
|---|---|---|
| 203, 206, 181 iii, iv | inculpatory evidence. Whether they received those documents in the first place is a matter to be determined during discovery, not in pleading stage. | n.5; ECF 49 at 7–11 (describing evidence). |
| 12 at 154 | This Title IX investigation took 708 days to finish (after plaintiff filed a complaint with OCR in January 2021) without justification. | *See supra* at 10–11. |
| 12-1, page 69-70 | "In the view of the investigative team, the clear anger, sense of betrayal, and resentment Party A felt towards Party B after their sexual encounter negatively impacted its assessment of her credibility significantly." | *See* Br. at 7–8, 23 (describing credibility assessment); ECF 12-1 at 65-80 (Plaintiff's credibility assessment, including discussion of Plaintiff's mental health). |
| | It's clearly irregular that the Team excluded or circumvented the possibility that plaintiff's those emotions were resulted from the alleged sexual assault by John Roe. Instead, these charlatans concluded that it was plaintiff's pre-existing condition subjected her to abuse others. | |
| 12-1, page 73, 78 | "the investigative team believed, based on the above exchange, that Party A seemed to project that she was in fact interested in having some sort of physical or sexual encounter with Party B on the night in questions, even if she did not want to engage in the behaviors in which they ultimately engaged. This lack of collaboration for Party A's statement negatively impacted the investigative team's view of her credibility" | *See* Br. at 7–8, 23 (describing credibility assessment); ECF 12-1 at 65–80 (Plaintiff's credibility assessment); *id.* at 100–06 (concluding insufficient evidence to determine that there was not affirmative consent); *id.* at 11 (definition of affirmative consent). |
| 12-1, page 63 | "The Team did not find it logical or reasonable that a college student responding to an invitation to 'have some fun and keep each other company' at 2:30 in the morning had no expectation that physical or sexual activity might occur and had no desire to engage in it. Furthermore, the investigative team also found it unreasonable that simply because party B asked Party A if she had depression (which their deceased classmate had suffered from), she jumped to the conclusion that Party B was one of the students offering general emotional support to her and other classmate." "Which the investigative Team believed could reasonably be understood as an *innuendo* about his desire to engage in some sort of sexual activity" | |
| | Columbia's its own 2019 GBM Policy clearly defined what constitutes "affirmative consent" and importance of not "making assumption". However, the investigators improperly speculated and interpreted plaintiff's behavior of seeking emotional support at late night as "innuendo" for consenting sexual activities when there was no sexually suggestive contents or affirmative consent. Plaintiff also told the Team it's not just | |

| | | |
|---|---|---|
| | because John Roe asked her whether she had depression, it also because (1) plaintiff had been confiding to John Roe about her unfruitful search of treatment and (b) a fellow student committed suicide because of depression a couple of months before the January 8 incident. Columbia's outdated victim-blaming arguments is how rape culture looks like. | |
| 12-1, page 78 | "Witness#1's statement that she said she had reactive attachment disorder…However, the investigative team had difficulty accepting that any of these reasons offered a full explanation as to why Party A wanted to remain in touch and in some form of a relationship with Party B from the beginning of June to almost the end of July 2019, if she was a victim of sexual assault."[15] <br> "The Team believed Party A instead had a lingering romantic interest in Party…the fact that there were many instances throughout the parties' written communication in which Party A seemed to actively be enjoying herself, rather than feeling a sense of obligation to help "better" Party B" | *See* Br. at 7–8, 23 (describing credibility assessment); ECF 12-1 at 65–80 (Plaintiff's credibility assessment); *id.* at 38 (policy guidelines for credibility assessment). |
| | If Plaintiff had romantic interest in John Roe after the incident, she could have asked John Roe to be his romantic partner when Roe said he would "do anything" as long as she does not report him to school, but she didn't. Defendants' own GBM Policy clearly states sexual violence can happen between romantic couples. Whether plaintiff had romantic interest to Roe not is irrelevant. | |
| 12-1, page 78 | Defendants failed to address the likelihood of the unprotected sex being non-consensual, and the STI plaintiff contracted may be the result of such non-consensual unprotected sex. Since females take more risk when engage in unprotected sex than males. Even if plaintiff romantically interested in John Roe, that does not mean she would risk her own well-being/pregnancy when unprotected sex does not bring female more physical pleasure. Defendants failed to address how John Roe put his own well-being at risk when he initiated the unprotected sex, if plaintiff had some serious infection disease. Plaintiff's fear of STI/pregnancy was corroborated by her medical records of many visits and exam/records provided. | *See* ECF 12-1 at 103–106 (consideration of affirmative consent). |
| 12-1, page 80-81, 86-87 | "this behavior gave the Team the impression tht Party B had a script of sorts that he wanted to adhere to throughout the investigation. However, the team also recognize that Party B was very fearful of both the investigative process and the potential outcome, and as a result, was making a strong effort to be prepared for anything the investigative Team might ask of him." | *See supra* at 8 n.6; Br. at 7–8, 23 (describing credibility assessment); ECF 12-1 at 80–89 (Roe's |

---

[15] *Fight or Flight' Are Not the Only Ways People Respond to Sexual Assault.* https://www.vice.com/en/article/v74eqj/fight-or-flight-and-harvey-weinstein-sexual-assault-trial-defense.

| | | | |
|---|---|---|---|
| | Whenever there is suspicious behavior by Roe, Defendants would rather exonerate him than incriminate for him—concluding Roe's fear indicates more of his innocence than culpability. | | *credibility assessment).* |
| 12-1 at 93 | Witness#2 provided evidence which intended to be inculpatory evidence, defendants again distorted it to be exculpatory for Roe. And conclude Roe is credible based on insubstantial details.<br>the probability of witness 2 giving false testimonial is no greater than that of having actual knowledge of the nature of incident. | | *See* ECF 12-1 at 90–93 (Witness #2 credibility assessment); *id.* at 105–06 (use of Witness #2 testimony in findings). |
| 12-1 | It's clearly irregular that Defendants conflate the concept of revictimization and recidivism as it stigmatized plaintiff's disability, when other university resources like SVR and CPS have a correct understanding of those concept and regularly advocate for victim of sexual violence university-wide with a series of event. | | *See supra* at 7–8 (Plaintiff's mental health considered); ECF 12-1 at 69, 73 (same); Br. at 18–19, 22. |
| 12-1 at 73 | It's clearly irregular that Defendants assume that every college student conform to or should be aware of the "hookup" culture when university policy explicitly defined what constitute consent. The investigators rely on common misconception and victim-blaming theory that is strictly forbidden by its own GBM policy. | | *See* ECF 12-1 at 70–73 (Plaintiff's credibility assessment); *id.* at 100–06 (discussion of consent). |
| 12-1 at 77 | The investigators plaintiff's reaction to Roe's prior abuse into being abusive/motive to threaten. If reporting Roe's sexual assault on plaintiff to GBM office is considered "harmful" action, then the GBM office who carried out the two-year Title IX process has inflicted more harm on Roe than anyone has; They also excluded plaintiff's explanation regarding reactive abuse and actual abuse during interview;[16] excluded plaintiff's response that Roe had a history of provoking three of his intimate partners to act out of their character and then accusing them of being abusive to him. [**REDACTED**] however in 2020, plaintiff only gave Roe a verbal warning for him to get professional help[before he assault more people] otherwise she will report him, Defendants found plaintiff "not credible" for her allegation because the "threatening" showed her motive to cause harm. | | *See* ECF 12-1 at 38–39 (GBM policy that prior conduct not considered); *id.* at 76–77 (discussing threatening Facebook messages); ECF 49 at 4 n.4. |

---

[16] *What is Reactive Abuse?* (March 26, 2021) https://yanahelps.com/blog/what-is-reactive-abuse/