UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE,

                *Plaintiff*,

   v.

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; KEVIN PITT; ALYSSA ANZALONE-NEWMAN; KRISTIN COLLADO, in their official capacities,

                *Defendants*.

No. 1:21-cv-05839 (ER)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Gabrielle E. Tenzer
Kyla P.S. Magun
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Facsimile: (212) 937-3734
gtenzer@kaplanhecker.com
kmagun@kaplanhecker.com

November 18, 2022

**TABLE OF CONTENTS**

**PAGE**

**PRELIMINARY STATEMENT** ................................................................................................. 1
**RELEVANT BACKGROUND** ................................................................................................... 1
**ARGUMENT** ................................................................................................................................ 5
    I.    Plaintiff Fails to Allege That She Was Denied Educational Opportunities. ..................... 5
    II.   Plaintiff Fails to Allege That Columbia's Actions Were "Clearly Unreasonable." ........ 7
        A.    Plaintiff's Attempt to Revive Prior Theories of How Columbia's Actions Were "Clearly Unreasonable" Fails. ................................................................................... 8
        B.    Plaintiff's New Deliberate Indifference Theory Also Fails. .................................... 14
**CONCLUSION** ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Atkinson v. Singh*,
  No. 19 Civ. 3779, 2022 WL 137634 (S.D.N.Y. Jan. 14, 2022) ............................................... 14

*Bailey v. N.Y. L. Sch.*,
  No. 16 Civ. 4283, 2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017) ............................................ 12

*Carabello v. New York City Dep't of Educ.*,
  928 F. Supp. 2d 627 (E.D.N.Y. 2013) ...................................................................................... 6

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ............................................................................................................ 5, 8

*Doe v. Univ. of Kentucky*,
  959 F.3d 246 (6th Cir. 2020) .................................................................................................... 6

*Gant ex rel. Gant v. Wallingford Bd. of Educ.*,
  195 F.3d 134 (2d Cir. 1999) ..................................................................................................... 7

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ................................................................................................................. 7

*Hayut v. State Univ. of New York*,
  352 F.3d 733 (2d Cir. 2003) ..................................................................................................... 7

*Nungesser v. Columbia Univ.*,
  169 F. Supp. 3d 353 (S.D.N.Y. 2016) ...................................................................................... 6

*Raihan v. George Washington Univ.*,
  324 F. Supp. 3d 102 (D.D.C. 2018) ......................................................................................... 6

*Roskin-Frazee v. Columbia Univ.*,
  No. 17 Civ. 2032, 2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018) ............................................ 9

*Soriano ex rel. Garcia v. Bd. of Educ. of City of New York*,
  No. 01 Civ. 4961, 2004 WL 2397610 (E.D.N.Y. Oct. 27, 2004) ........................................... 11

*Zamora v. N. Salem Cent. Sch. Dist.*,
  414 F. Supp. 2d 418 (S.D.N.Y. 2006) ...................................................................................... 7

Columbia respectfully submits this Memorandum of Law in Support of Defendant's Motion to Dismiss the Second Amended Complaint ("SAC," ECF 73).[1]

## PRELIMINARY STATEMENT

This Court recently dismissed all of Plaintiff's claims and granted Plaintiff leave to replead in a manner consistent with the Court's opinion. *See* ECF 71. In this latest iteration of her complaint, Plaintiff abandons all but one of her claims. But her new allegations do nothing as a legal matter to salvage her sole remaining Title IX claim for deliberate indifference.

Plaintiff's deliberate indifference claim fails for the same two reasons that it did the last time. First, Plaintiff has again failed to plead, as she must, that she was denied educational opportunities. And second, Plaintiff still has not shown that Columbia was "clearly unreasonable" in its response to her complaint of gender-based misconduct. As this Court previously concluded, "[a]t bottom, Doe's deliberate indifference claim is little more than a complaint that she was in some way deprived access to other, different procedures that she would have preferred, but . . . a mere preference for different procedures or, indeed, dissatisfaction or disagreement with the procedures used is insufficient to state a claim for deliberate indifference." ECF 71 at 29.

Nothing in the SAC changes the nature of Plaintiff's deliberate indifference claim, nor warrants a different outcome. The SAC should be dismissed with prejudice.

## RELEVANT BACKGROUND

Because this Court is already familiar with the facts of this case, Columbia incorporates by reference here the factual background summarized in its prior briefing and the Court's Opinion and Order dismissing the Amended Complaint ("Order"). *See* ECF 47 at 2-11; ECF 71 at 2-18.

---

[1] Capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (ECF 47). References to "¶ __" are to paragraphs of the SAC, and references to "Defendant" are to the sole remaining Defendant in the case, Columbia.

1

Although Plaintiff's SAC includes a number of new paragraphs, her core factual allegations—and the fatal flaws of her complaint—remain the same.

Facts Already in the Record:  Plaintiff has added numerous allegations to the SAC that simply reiterate details from the Investigative Report that were already incorporated into the Amended Complaint by reference, *see* ECF 71 at 1 n.2, and were even cited in the Court's Order. *Compare* ¶¶ 77-93 (describing Roe's fear of the Title IX process and Plaintiff's encounters with Roe from June through July 2019), *with* ECF 71 at 5-7 (same, citing the Investigative Report); *compare* ¶¶ 10-11 (discussing Plaintiff's C-PTSD diagnosis), *with* ECF 71 at 3, 7 (discussing Plaintiffs' allegations of PTSD); *compare* ¶¶ 27-28 (describing Plaintiff asking Roe if they could sleep together without having sex), *with* ECF 71 at 3 (same). None of these "new" allegations add any relevant facts that were not already before the Court when it correctly decided Columbia's first motion to dismiss.[2]

GBM Policy:  Similarly, Plaintiff has added allegations to the SAC that again take issue with the same provisions of Columbia's GBM Policy as in her Amended Complaint, including the provisions: (1) providing investigators with discretion to determine the relevance of evidence, ¶¶ 213-15, including mental health evidence specifically, ¶¶ 216-19; (2) concerning whether expert testimony should be included in the investigation, ¶¶ 220-22; and (3) precluding witnesses from the hearing process and limiting the hearing panel's consideration to material from the investigative report, ¶¶ 223-28. While the wording of these particular allegations in the SAC may be new, this Court addressed these same exact GBM Policy provisions in its prior Order and found Columbia's GBM Policy "comprehensive and considered." ECF 71 at 24; *see also id.* at 25 (discussing provision concerning Investigative Team's discretion to determine the relevance of

---

[2] Other minor, "new" allegations related to the underlying incident and Roe in no way impact the insufficient pleading of Plaintiff's deliberate indifference claim.  *See, e.g.*, ¶¶ 54-55, 65, 141-44.

2

evidence); *id.* at 26 (discussing provision concerning experts); *id.* at 27 n.12 (discussing provision concerning hearing process and witnesses).

Investigation and Hearing: Following this same theme, while Plaintiff has added details to her SAC concerning the application of the GBM Policy in her underlying proceeding, these "new" allegations concern issues that this Court already considered and rejected. *Compare* ¶¶ 187, 192, 218-19, 229 (Plaintiff's mental health records were not included in the Investigative Report or hearing record), *with* ECF 71 at 26 ("Doe's claim, then, that the Investigative Team excluded evidence of her mental health . . . is flatly contradicted by the Investigative Report."); *compare* ¶¶ 95-97, 192, 221 (alleging "expert" was not permitted to testify at hearing), *with* ECF 71 at 26 (finding the GBM Policy clear on expert testimony, and that Plaintiff failed to show that Columbia deviated from the Policy or that "compliance with this policy is in any way unreasonable"); *compare* ¶¶ 185, 226-28, 230 (witnesses were not included in the hearing), *with* ECF 71 at 27 n.12 (noting that the GBM Policy states: "Witnesses are not involved in the hearing process"); *compare* ¶¶ 99, 181-84 (alleging NYPD Detective's testimony not credible), *with* ECF 71 at 33 ("Doe's allegations with respect to the NYPD . . . do not reveal any irregularities in Columbia's process."); *compare* ¶¶ 235-39 (alleging that the Investigative Team did not interview GHAP peer support), *with* ECF 71 at 27 n.12 (noting with respect to Plaintiff's GHAP peer advisor that "the GBM Policy is clear that the Investigative Team has the discretion to determine whether certain witnesses should be included and excluded"); *compare* ¶¶ 123-24, 207-11 (alleging delay because of changes in GBM staffing and *Feibleman* investigation), *with* ECF 71 at 10-11, 34 (finding "[t]here is no evidence that any delay . . . was unjustified").[3]

---

[3] Plaintiff's other "new" allegations about the investigation are conclusory, *see* ¶¶ 127, 152, 202, 212, 232-34, reiterate facts already alleged in Plaintiff's Amended Complaint using different phrasing, *see* ¶¶ 103-05, 147-51, 162-74, or otherwise do not impact the insufficient pleading of Plaintiff's deliberate indifference claim, *see* ¶¶ 205-06.

3

Plaintiff's only actual new allegations regarding the investigation concern Witnesses #2 and #3. First, Plaintiff now alleges that Witnesses #2 and #3 were somehow able to review Plaintiff's testimony provided to the Investigative Team as "part of the GBM procedure." ¶¶ 130-36. But the GBM Policy contains no such procedure. *See* ECF 12-1 at 36 (describing procedures with respect to witnesses). To the contrary, the GBM Policy is clear that the "University will only reveal information about any report of gender-based misconduct to those who need to know the information . . . [and] will inform all University affiliates, including students, faculty and staff participating in a disciplinary process, that they are expected to maintain the privacy of the process." ECF 12-1 at 23-24.

Second, Plaintiff alleges that Witness #2 began a campaign against Roe, telling acquaintances about Roe's inappropriate conduct via social media, including that Roe preyed on "girls who are vulnerable and friendless." ¶¶ 137-41. Plaintiff alleges that these actions both "mischaracterized" her to fellow students and "improperly weaponized her personal experience," and that when she (and Roe) reported this to the Investigative Team, no action was taken. ¶¶ 140, 145-46, 240-44.

Educational Opportunities: Finally, in an effort to plead a deprivation of educational opportunities—something the Court found she had failed to do in her Amended Complaint, *see* ECF 71 at 23—Plaintiff alleges that she encountered Roe in Columbia's Butler Library on a "daily basis," and that she felt "unease, triggered, [and] therefore could not concentrate" every time she saw him. ¶¶ 57-58. She also alleges that since Roe lived on the same street as Butler Library, she "sometimes" saw him when leaving the library, ¶ 59, and that in an attempt to avoid seeing him, she stopped going to Butler Library, ¶ 60. Plaintiff alleges that this occurred from January to April 2019, ¶ 57, over four months *before* Plaintiff made her GBM complaint to Columbia in August

4

2019, ¶ 94. As discussed below, such allegations are insufficient as a matter of law to state a deliberate indifference claim.[4]

## ARGUMENT

Like her prior deliberate indifference claim, Plaintiff's repleaded claim fails for the same two independent and equally fatal reasons. First, Plaintiff still has not alleged that she was denied educational opportunities or benefits. And second, Plaintiff still has not shown that the University acted in a manner that was "clearly unreasonable" when responding to her allegations of gender-based misconduct.

### I. Plaintiff Fails to Allege That She Was Denied Educational Opportunities.

In its prior Order, this Court found that Plaintiff failed to "point to any facts showing how her education was altered," let alone show "how any discomfort she felt—or, indeed, any other physical or emotional harm she suffered—was 'so severe, pervasive, and offensive' as to deprive her of access to educational opportunities or benefits." ECF 71 at 23 (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999)). As a result, her deliberate indifference claim was dismissed. *See id.* at 23; *see also Davis*, 526 U.S. at 654 (considering whether the alleged harassment had a "concrete, negative effect" on the student's "ability to receive an education"). Plaintiff has not added any new allegations to her SAC that would warrant a change in this outcome.

In the SAC, Plaintiff now alleges that she stopped going to Columbia's Butler Library after encountering Roe there on a regular basis from January to April 2019, ¶¶ 57-59, and that this

---

[4] Plaintiff has included other new allegations that are wholly unrelated to her claims or not appropriate for a complaint, and Defendant therefore does not address them. *See, e.g.*, ¶¶ 210-11 (citing to a recent dissent in a Second Circuit case). Plaintiff has also added conclusory and entirely unsupported allegations suggesting that Columbia "distorted" information and "falsified" testimony when reaching its conclusions in the Investigative Report. *See, e.g.*, ¶¶ 152, 228, 249-51. This Court has already recognized that such allegations cannot be considered. *See* ECF 71 at 35 n.13.

reduced use of the library "qualifies as loss of educational benefits," ¶ 61. Not so. Plaintiff alleges that she lost the use of one of the University's twenty-two libraries for some limited period of time.⁵ ¶ 60. She does not allege that she needed access to Butler Library for any particular reason, that she did not have access to other libraries or alternative study spaces, or that her supposed inability to use Butler Library in any way impacted her success in her courses. Courts have routinely dismissed deliberate indifference claims under similar circumstances. *See, e.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 368 (S.D.N.Y. 2016) (dismissing deliberate indifference claim were there was "no suggestion that [plaintiff's] grades dropped, that he was delayed or prevented from graduating . . . , or that he missed a single class as a result" of the alleged harassment); *Carabello v. New York City Dep't of Educ.,* 928 F. Supp. 2d 627, 644 (E.D.N.Y. 2013) (finding no deprivation of educational opportunities when there was no evidence of the "absence of declining grades and other evidence of a 'concrete negative effect'" on plaintiff's education, even though plaintiff suffered mental health repercussions from incident (internal citation omitted)); *see also, e.g.*, *Doe v. Univ. of Kentucky*, 959 F.3d 246, 251-52 (6th Cir. 2020) (plaintiff's claims that alleged assaulter sat next to her in the library on multiple occasions, thereby causing her to limit when she could go to the library, even when combined with other allegations, were insufficient to rise to the level of a deliberate indifference claim); *Raihan v. George Washington Univ.*, 324 F. Supp. 3d 102, 105 (D.D.C. 2018) (plaintiff's avoidance of the campus gym because she once encountered her alleged assaulter there was not a deprivation of educational opportunities sufficient to establish a deliberate indifference claim).

      Even if Plaintiff had sufficiently pled the loss of educational opportunities or benefits, which she has not, the loss that she alleges entirely pre-dates her complaint to the University by a

---

⁵ Plaintiff does not allege how long she stopped going to Butler Library and whether she continued not to go after she resumed contact with Roe in May 2019. *See* ¶¶ 76, 78, 83.

matter of months. *See supra* at 5. The Supreme Court has made clear that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). As one court has explained, "it would be inappropriate to base a finding of discriminatory intent on a defendant's failure to respond to circumstances that were not actually known to [it], even if [it] reasonably should have known." *Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 424 (S.D.N.Y. 2006) (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 n.6 (2d Cir. 1999)); *see also Hayut v. State Univ. of New York*, 352 F.3d 733, 751 (2d Cir. 2003) (defendant "cannot be held liable under Title IX for any harassment that occurred [prior to the complaint]").

Here, since Plaintiff did not put Columbia on notice until she made her complaint in August 2019, Columbia did not have actual knowledge of, and therefore could not have been deliberately indifferent to, any purported loss of educational opportunities before then. Moreover, immediately after the University received Plaintiff's complaint in August 2019, a no-contact directive was put in place that would have prevented any contact with Roe, whether at Butler Library or otherwise. *See* ECF 71 at 9 (no-contact directive in effect on August 6, 2019). Plaintiff therefore cannot allege that she was deprived of educational opportunities or benefits once Columbia had "actual knowledge" of her complaint.

## II. Plaintiff Fails to Allege That Columbia's Actions Were "Clearly Unreasonable."

Not only has Plaintiff failed to plead facts demonstrating that she was denied educational opportunities, but she also has not shown that Columbia's response to any alleged harassment was "clearly unreasonable in light of the known circumstances." ECF 71 at 22-23 (citing *Davis*, 526

7

U.S. at 648, 650). This independent reason is sufficient by itself to defeat her deliberate indifference claim.

As this Court explained in its recent Order, demonstrating that a university acted in a manner that was "clearly unreasonable" does not constitute a "mere 'reasonableness' standard." ECF 71 at 23 (quoting *Davis*, 526 U.S. at 652.) Rather, it is a "high standard that seeks to eliminate any risk that an educational institution would be liable . . . not for its own official decision but instead for [another individual's] independent actions." *Id.* at 24 (quoting *Davis*, 526 U.S. at 643 (internal quotation marks omitted)). "Indeed, for a court to find that a school acted with deliberate indifference, the measures taken must be so inadequate that a degree of discriminatory intent may be inferred." *Id.*

Plaintiff has pled no such facts here. In her SAC, Plaintiff's repurposed and new theories of how Columbia's actions were clearly unreasonable boil down to nothing more than disagreements with the University's GBM Policy or decisions made in accordance with that Policy, none of which rise to the "high standard" of being clearly unreasonable. *Davis*, 526 U.S. at 643; *see also* ECF 71 at 27, 29. Just as in her Amended Complaint, Doe's repleaded deliberate indifference claim "is little more than a complaint that she was in some way deprived access to other, different procedures that she would have preferred." ECF 71 at 29. As this Court has already explained, "a mere preference for different procedures or, indeed, dissatisfaction or disagreement with the procedures used is insufficient to state a claim for deliberate indifference." *Id.*

### A. Plaintiff's Attempt to Revive Prior Theories of How Columbia's Actions Were "Clearly Unreasonable" Fails.

Plaintiff's repeated theories of how Columbia acted in a manner that was "clearly unreasonable" fail for the same reasons they did on Columbia's first motion to dismiss.

***Columbia's Policies, Training, and Supervision.*** Plaintiff alleges that Columbia acted in a manner that was clearly unreasonable because the 2019 GBM Policy is "at [] odds" with Title IX and "effectively makes it impossible for a complainant to prove the alleged sexual assault occurred." ¶ 212; *see also* ¶¶ 202, 233.  But this Court already found that "Columbia's 2019 GBM Policy and . . . the Investigative Report . . . together reveal that at the time it investigated Doe's complaint, Columbia had in place a comprehensive and considered GBM policy, and adhered to it in adjudicating Doe's claims," thereby defeating Plaintiff's deliberate indifference claim.  ECF 71 at 24.  Plaintiff's new general and conclusory allegations about Columbia's GBM Policy do not warrant any change in this Court's holding. *See, e.g.*, *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032, 2018 WL 6523721, at *5 (S.D.N.Y. Nov. 26, 2018) (dismissing claim and recognizing that "[c]ourts generally have refused to impose Title IX liability based on a university's official policy").

Plaintiff's allegations regarding the staffing of the GBM Office and changes in Columbia administration do not change the outcome either.  *See* ¶¶ 205-09.  That Columbia's investigators or administrators changed, or that the GBM Office increased or decreased its staffing, is irrelevant to whether Columbia acted with deliberate indifference towards Plaintiff.

***Plaintiff's Mental Health Evidence and "Experts."*** Plaintiff again attempts to plead that it was "clearly unreasonable" for the Investigative Team to exclude mental health evidence, including evidence from her "experts," Dr. Rachel Efron and her SVR advocate. *See* ¶¶ 163, 221.  As an initial matter, Dr. Efron was Plaintiff's treating psychologist, ¶ 95, and SVR advocates are individuals certified to provide crisis intervention and safety planning to survivors of violence, *see* Columbia Health, *Survivor Advocacy*, https://www.health.columbia.edu/services/survivor-advocacy.  Plaintiff provides no basis for why the GBM Office, or this Court, would or should

consider a party's personal psychologist or advocate to be an "expert."

Nevertheless, none of Plaintiff's new allegations "show that Columbia deviated from its policy on experts . . . [or] that Columbia's compliance with this policy is in any way unreasonable." ECF 71 at 26. As this Court already acknowledged, the GBM Policy is clear that "[a] party may also request that a topic be considered by an expert, but a party is not permitted to retain their own expert to consider a topic or submit testimony and/or reports as part of the investigation. In the limited circumstance that the Investigative Team grants a party's request for an expert to consider a topic, then the Investigative Team will retain an appropriate expert." *Id.* (quoting ECF 12-1 at 36). Further, the GBM Policy states that the Investigative Team is not required to include expert evidence, even if a party requests it; rather, it "may" include expert evidence if it "determines that expertise on a topic will assist the Hearing Panel in making its determination(s)." *Id.* Accordingly, Plaintiff had no right to have expert evidence considered at all, let alone to have Dr. Efron or her SVR advocate participate in the proceeding. While Plaintiff may have preferred otherwise, her mere preference for a different procedure does not amount to deliberate indifference. *Id.* at 27-29 (citing cases).

Moreover, as this Court has explained, "the Investigative Team *did* consider all the mental health records Doe submitted and *did* attach as exhibits to the Report those records it relied upon— in its discretion—in drafting the Report." *Id.* at 26 (emphasis in original); *see also id.* at 25 (finding the Investigative Team's process "was [not] in any way 'clearly unreasonable'"); *id.* at 31 ("the Investigative Team—pursuant to the 2019 GBM policy—has the discretion to determine the relevance of *any* proffered evidence and also to determine whether such evidence should be included or excluded in the investigative process," including mental health evidence (emphasis added)). None of Plaintiff's newly pleaded allegations give the Court any reason to change its

10

prior findings.

For example, Plaintiff now claims that the Investigative Team did not consider the possibility of the "freeze" and "fawn" response. ¶ 173. But that is "flatly contradicted by the Investigative Report," which shows that the Investigative Team "evaluated Doe's proffered evidence." ECF 71 at 26; *see also* Rep. at 4 n.4, 88, 90. While Plaintiff includes extremely detailed descriptions of this behavioral response in the SAC, *see, e.g.*, ¶¶ 163-74, Exs. A & B, she does not claim that she provided that same evidence to the Investigative Team, nor is there any evidence that she did. Rep. at 4 n.4 (outlining mental health evidence presented to Investigative Team by Plaintiff). It therefore cannot be "clearly unreasonable" for the Investigative Team not to have delved into this issue in depth in the Investigative Report. Again, "[w]hile Doe might have wanted a different response from Columbia, with regard to its use of evidence, 'the standard is not whether the [school] responded in a particular manner, but whether their response was clearly unreasonable in light of all the known circumstances.'" ECF 71 at 27 (quoting *Soriano ex rel. Garcia v. Bd. of Educ. of City of New York*, No. 01 Civ. 4961, 2004 WL 2397610, at *4 (E.D.N.Y. Oct. 27, 2004)).[6]

***Witness #1 (NYPD Detective).*** Plaintiff again alleges that Witness #1's testimony was incredible, and that Columbia acted "clearly unreasonably" when relying on it. *See* ¶¶ 181-84. Plaintiff has added allegations that Witness #1's testimony to the investigators is "improbable" because Witness #1 said that "a school counselor told [Plaintiff] she was the victim of a crime. And that's why she came forward. She wouldn't have come forward if the person didn't tell her that," ¶ 179—a statement which Plaintiff now alleges cannot be true because Columbia has a policy that staff "should not give direct characterization or advice regarding" students' sexual

---

[6] The Investigative Report contains additional references to the Investigative Team's consideration of the "freeze" response that are not currently in the record. Should the Court wish to review these additional references, Columbia is prepared to file them under seal at the Court's instruction.

11

experiences, *see* ¶ 181.[7]  Plaintiff's new allegation concerning Witness #1 is contradicted by the Investigative Report, which found Witness #1's statement about the school counselor reliable on the grounds that Plaintiff herself told the Investigative Team that the person she spoke with in CPS "strongly believed this person [*Roe*] is dangerous and he needs to go to treatment and punishment if he wants to change." Rep. at 111; *see also id.* ("[I]t was reasonable to the Investigative Team that Witness #1 would describe a direct quote from Party A that she disputed months later, as she did not remember what she specifically told him."). Accordingly, this new allegation need not be taken as true. *See, e.g.*, *Bailey v. N.Y. L. Sch.,* No. 16 Civ. 4283, 2017 WL 6611582, at *7 (S.D.N.Y. Dec. 27, 2017) (Ramos, J.).

Plaintiff also re-alleges that Witness #1's statement to the Investigative Team is inconsistent with the police report she attached to her Amended Complaint, which she now alleges was completed by Witness #1. *See* ¶¶ 99, 226; ECF 12-1 at 59-61. Plaintiff claims that this makes Witness #1 incredible and any reliance on his testimony "clearly unreasonable." ¶ 184. *Cf.* ECF 71 at 33. Putting aside that this allegation is entirely conclusory, the Investigative Team cannot have acted "clearly unreasonably" based on information it did not have, and Plaintiff does not allege that the Investigative Team had access to this police report at any time during the investigation. Accordingly, Plaintiff has not sufficiently pled that the Investigative Team's use of Witness #1's testimony was "clearly unreasonable."

**Witness Participation in the Hearing.** Plaintiff attempts to plead that Columbia was "clearly unreasonable" by not permitting witnesses, particularly Dr. Efron and Witness #1, to testify at the hearing. *See, e.g.*, ¶¶ 227-30. But as this Court has already acknowledged, the GBM Policy is clear that "[w]itnesses are not involved in the hearing process." ECF 71 at 27 n.12.

---

[7] Of course, that "a school counselor told her that she was a victim of a crime," ¶ 179, is not, as Plaintiff alleges, the same thing as "staff within Columbia health directly ask[ing] plaintiff to report her incident to police," ¶ 183.

Again, Plaintiff's disagreement with the process is not sufficient to state a claim for deliberate indifference. *Id.* at 29.[8]

***Plaintiff's GHAP Peer Advisor.*** In the SAC, Plaintiff adds allegations that she first raised in her opposition to Columbia's first motion to dismiss (not in her Amended Complaint) that Columbia was "clearly unreasonable" for not interviewing her GHAP peer advisor. *See* ECF 71 at 27 n.12. But as this Court already acknowledged, "the GBM Policy is clear that the Investigative Team has the discretion to determine whether certain witnesses should be included and excluded; in this case, the Team chose not to interview the peer advisor, in part because that peer advisor is a confidential resource." *Id*. Plaintiff now claims that the Investigative Team was clearly unreasonable in exercising its discretion not to interview the GHAP staff because it separately considered Plaintiff's GHAP records as part of the proceeding, and therefore Plaintiff "already waived her confidentiality voluntarily." ¶¶ 236-38. But the Investigative Team did not believe that confidentiality had been waived. *See* ECF 12-1 at 74-75 n.48. Moreover, Plaintiff voluntarily provided her GHAP records to the Investigative Team and the Investigative Team appropriately determined that those records were sufficient. Rep. at 4 n.4. Under these circumstances, abiding by the GBM Office's practice of "not typically" interviewing confidential resources does not rise to the level of being "clearly unreasonable." ECF 12-1 at 74-75 n.48; *see also* ECF 12-1 at 17-18 (describing policy regarding confidential resources, including that such resources "will not share any identifying information with others, except as required by law in emergency circumstances").

***Investigation Timeline.*** Finally, Plaintiff attempts to plead that her investigation was delayed, both because there was turnover in the GBM Office and because the GBM Office was

---

[8] Furthermore, as this Court has recognized, there was no hearing because Plaintiff failed to attend the hearing she requested. ECF 71 at 27 n.12. That Plaintiff now alleges that this was because the hearing was a "mere formality" or a "discriminatory process," ¶ 232, does not change the fact that she chose not to participate.

13

focused on resolving the Feibleman matter and not her case. ¶¶ 123-24. But this Court already considered these allegations, *see* ECF 71 at 10-11, 34, and so they do nothing to change the Court's finding that "[t]here is no evidence that any delay . . . was unjustified," *id.*

### B.   Plaintiff's New Deliberate Indifference Theory Also Fails.

Plaintiff's only new theory as to how Columbia acted "clearly unreasonably" is that Columbia allegedly shared evidence with Witness #2, leading him to violate her "privacy and personal autonomy," and that Columbia failed to respond to this purported behavior. *See supra* at 4. As an initial matter, Plaintiff misrepresents the GBM procedure. ¶ 135. Nowhere in the GBM Policy does it say that witnesses review evidence and testimony submitted by the parties; accordingly, Plaintiff's allegation that Witness #2 obtained certain information in this manner is unfounded. Moreover, Plaintiff's allegations about Witness #2's behavior are too vague. *See Atkinson v. Singh*, No. 19 Civ. 3779, 2022 WL 137634, at *10 (S.D.N.Y. Jan. 14, 2022) (generalized allegations of retaliatory treatment insufficient to support discrimination claim). While Plaintiff claims generally that Witness #2 "mischaracterize[d]" and used her story improperly, she provides no specific allegations as to how he did so and to whom he made any such disclosure. ¶ 140. Rather, she alleges only that Witness #2 reached out to others concerning Roe, including to inquire whether anyone had a negative experience with Roe. ¶¶ 137-38; *see also* ¶ 140.[9]

---

[9] Even if Plaintiff had plausibly alleged that Witness #2 inappropriately shared her story, with respect to privacy, the GBM Policy states that the University will "inform all University affiliates, including students, faculty and staff participating in a disciplinary process that they are expected to maintain the privacy of the process." ECF 12-1 at 23-24; *see also* ¶ 240. The Policy does not guarantee privacy. Accordingly, Columbia's alleged response was not "clearly unreasonable." *See* ECF 71 at 28 (Columbia not clearly unreasonable when complying with its own policies). And to the extent Plaintiff is alleging that Columbia was deliberately indifferent in not responding to a purported claim of retaliation made by Roe, *see* ¶¶ 242-44, that is not Plaintiff's claim to pursue.

14

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the SAC in its entirety, with prejudice.

Dated: November 18, 2022

Respectfully submitted,

By: _____

Gabrielle E. Tenzer
Kyla P.S. Magun
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Facsimile: (212) 937-3734
gtenzer@kaplanhecker.com
kmagun@kaplanhecker.com

*Attorneys for Defendant*