UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x
                                :

JANE DOE                        :

              *Pro Se* Plaintiff,    :

                                :      Case No.: 1:21-cv-05839-ER

             -against-          :

                                :

THE TRUSTEES OF COLUMBIA UNIVERSITY IN :
THE CITY OF NEW YORK           :

                 Defendant    :

                                :

------------------------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S
## <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

Jane Doe
*Pro Se Plaintiff*
PO Box 297
New York, NY, 10044
646.920.4618
doe826499@gmail.com

December 2, 2022

## <u>TABLE OF CONTENTS</u>

PAGE

**PRELIMINARY STATEMENT** ........................................................................................1

**RELEVANT BACKGROUND** ........................................................................................2

**ARGUMENT** ...................................................................................................................4

    I.      The integrity of defendant's Title IX process and authenticity of its investigative report is contested by the well-pleaded facts of the cured complaint ("SAC") ...............................................................................4

    II.    The effect on "loss of educational benefits" only needs to be "negative and concrete" ...............................................................................................6

          A.    Defendant narrowed the circumstances under which a recipient may be liable under Title IX citing to incomparable cases..............................8

          B.    Defendant fabricated or conflated legal requirements about "loss of educational benefits"—i.e., timing, specific remedy...............................8

    III.   Plaintiff has adequately alleged "policy ambiguity or deficit" and improper interpretations as "clearly unreasonable" pursuant to holdings in *Davis*[1]..............9

          A.    Sex discrimination and Title IX violation take different forms as recognized by Supreme Court—including "failure to adequately investigate sexual assault complaints" ...................................................10

          B.    Defendant's inadequate response resulted from its deficient "official policy" and numerous misinterpretations as "official decisions" ............12

          C.    The Second Circuit dissent[2] is complementary to plaintiff's claim on "policy of deliberate indifference" ……...............................................12

    **CONCLUSION** ...............................................................................................14

---

[1] "When Congress acts pursuant to its spending power, it generates legislation "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In interpreting language in spending legislation, we thus "insis[t] that Congress speak with a clear voice," recognizing that "[t]here can, of course, be no knowing acceptance [of the terms of the putative contract] if a State is unaware of the conditions [imposed by the legislation] or is unable to ascertain what is expected of it." Ibid.; see also id., at 24–25, 101 S.Ct. 1531." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, *640 (1999)

[2] Exhibit C of SAC.

## **TABLE OF AUTHORITIES**

**CASES**                                                                                          **PAGE**

*Czerwienski et al v. President and Fellows of Harvard College et al,*
    Civ. No. 1:22-cv-10202-JGD, Doc.78 (D. Mass, Sep 7, 2022) …….…….…….……11

*Davis v. Monroe Cnty. Bd. of Educ.*
    526 U.S. 629, 640, 648, 651 (1999) ……………………….…….……..…2,3,6,7,9,10,11,12

*Doe v. Princeton University.,*
    30 F.4th 335, 342, 343 (3d Cir. 2022) ……………….…………………….……........…5

*Dwyer v. Allbirds, Inc.,*
    No. 21-CV-5238 (CS), 2022 WL 1136799 *4 (S.D.N.Y. Apr. 18, 2022) …........…….5

*Edwards v. Khalil,*
    No. 18-CV-5138 (CS), 2021 WL 5450207 *3 (S.D.N.Y. Nov. 22, 2021) ….….……5

*Fairfax County School Board, Petitioner v. Jane Doe,*
    No.21-968 (Nov.21, 2022, Petition DENIED) ………………….…………..…….11

*Jackson v. Birmingham Bd. of Educ.,*
    544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361,169,1502 (2005) ……….........…10

*Nungesser v. Columbia Univ.,*
    169 F. Supp. 3d 353, 368 (S.D.N.Y. 2016) ……………………………….……........8

*Parrilla v. United States,*
    No. 13-CR-360 (AJN), 2021 WL 4066021, 22, 23 (S.D.N.Y. Sept.7, 2021) ….……...1

*United States ex rel. Foreman v. AECOM,*
    19 F.4th 85 *106 (2d Cir. Nov. 19, 2021)……………………………………..…….…4

*University of Toledo, Petitioner v. Jaycee Wamer,*
    No. 22-123 (Nov.21, 2022, Petition DENIED) ………………………..…….……..11

## **STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................4

Fed. R. Civ. P. 56 ....................................................................................................2

**REGULATIONS**

Exemptions from Title IX (March 8, 2021) https://www2.ed.gov/about/offices/list/ocr/docs/t9-rel-exempt/index.html...................................................................................................................7

**OTHER AUTHORITY**

U.S. Supreme Court lets sexual harassment suits proceed against schools (Nov. 21, 2022) https://www.reuters.com/legal/us-supreme-court-lets-sexual-harassment-suits-proceed-against-schools-2022-11-21/...........................................................................................................11

*Pro se* Plaintiff respectfully submits this Memorandum of Law in Opposition to Columbia's motion to dismiss the Second Amended Complaint ("SAC"). Doc.73. The Court should permit plaintiff to move for summary judgement at this point since defendant has waived its defense[1] to her core allegation—policy ambiguity and the resultant "failure to adequately investigate sexual assault complaint". ¶¶[2] 245, 246.

## PRELIMINARY STATEMENT

On August 25th, 2022, the Court granted defendant's prior motion without a precedential holding of dismissal—meaning all its statements were based on information presented by that time therefore *not final*, and voluntarily gave plaintiff an opportunity to amend her pleading in consistent with its advisory opinions ("Order").

There is no actual holding in the Order, however, defendant repeatedly cited to those pending opinions (that contains no precedential value) as arguments in its present motion. Defendant's legal team—consisting of five former clerks at federal court, spent five weeks on its 15-page motion yet circumvented plaintiff's core allegations—policy ambiguity and the resultant "failure to adequately investigate sexual assault complaint". Defendant did not confirm or deny whether such policy ambiguities exist—multiple plausible interpretations of every key provision, nor did it explain why one interpretation it chose over the other better serves the purpose of Title IX Statute.

---

[1] See *Parrilla v. United States*, No. 13-CR-360 (AJN), 2021 WL 4066021, 22 (S.D.N.Y. Sept. 7, 2021) "The Court afforded Thomas the opportunity to review these materials and to "supplement his reply brief," but it warned Thomas that "new arguments cannot usually be raised in a reply brief." Dkt. No. 362 (citing *McBride v. BIC Consumer Prod. Mfg. Co*., 583 F.3d 92, 96 (2d Cir. 2009). The Court concludes that the new arguments Thomas raised in his reply brief are waived…As the Court previously informed Thomas, the Court "ordinarily will not consider issues raised for the first time in a reply brief." *McBride*, 583 F.3d at 96. "This rule applies even when the moving party is *pro se*." *Farmer v. United States*, No. 12-CR-758 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) (collecting cases)

[2] "¶¶" refers to paragraph number of SAC.

Rule 56 permits parties to file a motion for summary judgment at any time until 30 days after the close of all discovery, if there is no genuine dispute as to any material fact. The facts in this case are so developed that nothing remains but questions of law—the determination of issues depends upon the construction of a written instrument (such as a contract) and its legal effect. This is deemed a matter of law, and the trial court may resolve this matter at summary judgment.

Title IX is "in the nature of a contract" with Congress: "in return for federal funds, the States agree to comply with federally imposed conditions. [t]here can, of course, be no knowing acceptance [of the terms of the putative contract] if a State is unaware of the conditions [imposed by the legislation] or is unable to ascertain what is expected of it." (quoting *Davis*, 640)

Since 2014, Columbia has used a university policy where (1) the language is, in fact, ambiguous, unclear, or vague; (2) applying the plain meaning of provision language would lead to an absurd or unreasonable result; (3) there is clear evidence of contrary legislative intent[3]. Defendant has showed how it construe its GBM policy in the prior and present motions, which revealed that it was unaware of what Title IX expects it to do in the first place.

## RELEVANT BACKGROUND

Since an amended complaint completely supersedes—not appends—the previous one, plaintiff therefore retained all relevant facts in the SAC. As the Court carefully evaluated each of her old cause of actions, and explicitly stated in the Order that plaintiff cannot possibly show "gender bias" in any event for the first and third cause of actions—the type of sex discrimination typically experienced by the male accused, Doc.71, 22, 35. Hence, plaintiff decided to focus on

---

[3] Though with different understanding and approach, DOE from both Trump Administration and Biden Administration intended to support alleged victims of sexual assault, thus give them more opportunities to prove their sexual assault claim—i.e., expand the definition of sexual harassment, lower evidentiary standard, requiring medical records and live hearing, mediation option (to exercise victims' personal autonomy), etc. Columbia has been doing the opposite: to frustrate victims to prove their sexual assault cases while denying their request for mediation, with no justification.

her deliberate indifference claim—typically available to alleged victims, considering judicial

efficiency. The Court pointed out the defects for this claim and for the overall complaint, as

reflected in the following table:

| | Order and Opinions | How it relates to "deliberate indifference" claim/ Legal basis | Revisions reflected in SAC |
|---|---|---|---|
| Suggested Additions | (1) to materialize "loss of educational benefits. (2) to specify whether the NYPD detective/Witness#1 wrote the incident report in August 2019. (3) citations to expert testimonials/further explanations of "freeze" and "fawn". (4) to identify the expert who produced plaintiff's medical records acknowledging her "fawn" response as valid trauma response. (5) policies deficits/improper interpretations of defendant's 2019 GBM policy. | (1) one of the legal elements of this claim. (2) to sufficiently allege "falsifying evidence and investigative report" and show "obvious needs" for a live hearing with witness participation; to *adequately contest the authenticity* of the documents incorporated by reference. (3) to show "obvious need" to admit—not just "consider"— such medical records as evidence for investigation. (4) to sufficiently allege exclusion of such medical records as "clearly unreasonable". (5) "policy vagueness" pursuant to *Davis*, 640. | ¶¶ 57-61.<br><br>¶¶ 99, 113, 180, 184, 226.<br><br>¶¶ 166-172<br><br>¶¶ 172, 192, 214, 246, 95-97, 163<br><br>¶¶ 212-244 |
| Suggested Deletions | (1) Any contradictions within the Amended Complaint, including those in exhibits/documents incorporated by reference. (2) 1st and 3rd cause of actions—violation of Title IX by *not* implementing the 2020 New Title IX regulations, and "erroneous outcome" claim. | (1) the facts contradicted by exhibits of which the authenticity is not disputed, cannot be accepted as true.<br><br>(2) Cannot show "gender bias" in any event as an alleged victim. | removed all previous exhibits, 1st and 3rd cause of actions (in light of judicial efficiency) |

Because of those revisions, Plaintiff's core allegation has changed from "preferring the 2020 policy over the 2019 policy" to "policy deficits" within one policy/the 2019 policy. Defendant's extensive reiteration of old arguments from its prior motion is no longer useful.

## ARGUMENT

**I.    The Integrity of Defendant's Title IX Process and Authenticity of Its Investigative Report is Contested by the Well-pleaded Facts of the Cured Complaint ("SAC").**

The Court should not credit the investigative report where the facts are disputed by the well-plead facts in SAC, as Plaintiff has made all necessary revisions in consistent with the Order. See *United States ex rel. Foreman v. AECOM*, 19 F.4th 85 *106 (2d Cir. Nov. 19, 2021) "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be considered integral to the complaint, the plaintiff must "rel[y] on the terms and effect of a document in drafting the complaint ... mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). And "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and it must be clear that "there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006));

See *Edwards v. Khalil,* No. 18-CV-5138 (CS), 2021 WL 5450207 *3 (S.D.N.Y. Nov. 22, 2021) "Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016) (cleaned up). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough.""*Id*.

See *Dwyer v. Allbirds, Inc.,* No. 21-CV-5238 (CS), 2022 WL 1136799 *4 (S.D.N.Y. Apr. 18, 2022) "And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document."

Also see *Doe v. Princeton University*., 30 F.4th 335, 343 (3d Cir. 2022) "Because the Panel Report was "integral to" and "explicitly relied upon in the [C]omplaint, consideration is appropriate. But consideration only goes so far. When the truth of facts in an "integral" document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail. *USciences* reflects this approach. There, we accepted facts in the university's Title IX investigator's report as true when they were not disputed by the complaint. But not facts challenged by the plaintiff. For example, we credited the report's assertion of how many drinks Doe and Roe consumed on the relevant night. See 961 F.3d at 210. But where the complaint alleged that Doe and Roe "were comparably intoxicated [which] undermined [their] ability to give affirmative consent," we did not rely on the report's contrary assertion that "Doe ... told the investigator that [the] sexual encounter ... was mutually consensual." Id. at 210 n.4.8

Here, the District Court noted that the Panel's "credibility determinations were supported by sufficient evidence." (App. at 13.) That finding contradicted Doe's assertion that the Panel rendered "inconsistent credibility determinations." (App. at 63, 85.) As a result, crediting the Report's assertion over the Complaint's was improper."

## II.    The Effect on "Loss of Educational Benefits" Only Needs to be "Negative and Concrete". (quoting *Davis*)

The Supreme Court construe the language of statute and regulations broadly, and there has never been an exhaustive list of what qualify as "loss of educational benefits". Any facts that can show "concrete negative effect" on educational experience should suffice for two reasons:

(1) "declining grades" or academic underperformance is not the only indicator of psychological trauma, and educational experience includes extra curriculum as well—i.e., intercollegiate athletics, field trip, etc. (2) Title IX protections covers all academic programs within a recipient besides matriculated, full-time program—as long as its mission is at least in part educational—i.e., summer sessions for high school students, non-matriculated and part-time programs, online classes, etc.

Dysfunction is a common symptom of interpersonal trauma—i.e., avoiding school and people which result in declining grades, etc. Overworking can be another typical response as an internal avoidance of feelings related to the incident by overly focusing on one's school or work[4]—especially when one's field of study is something one has genuine passion about. When a victim's symptom of sexual trauma happens to be overworking or becoming more focusing on the schoolwork, the "loss of educational benefits" cannot be expected to manifest in "declining grades", but in other aspects of her educational experience—such as avoiding a particular

---

[4] Substance abuse is also an example of internally avoiding feelings and thoughts.

resource, area, or community on campus.[5] See *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629 (1999) "It is not necessary, however, to show physical exclusion to demonstrate that students have been deprived by the actions of another student or students of an educational opportunity on the basis of sex. Rather, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." 651; "the drop-off in grades provides necessary evidence of a potential link between the harassed student's education and the harasser's misconduct, but the harassed student's ability to state a cognizable claim depends equally on the alleged persistence and severity of the harasser's actions and the board's alleged knowledge and deliberate indifference." 652.

Second, since every non-matriculated, part-time, or remote student is also protected under Title IX[6], "delayed graduation" or "missing classes" (along with "declining grades") cannot be a universal indicator of "loss of educational benefits". Even if plaintiff alleged "declining academic performance" for her case, defendant could argue that was caused by plaintiff's pre-existing/unstable mental condition, not by the alleged incident with Roe. In plaintiff's case, the most "negative and concrete" loss of educational benefits is her reduced use of university's main library, which has the most academic resources and spaces in comparison with any other library, most students only go to Butler library for: borrowing books, research for school assignments, computer use, etc. A recipient must guarantee equal access of educational recourse to all

---

[5] Plaintiff has witnessed multiple actual victims who were assaulted and traumatized but maintained stellar grades.
[6] Exemptions from Title IX (March 8, 2021) https://www2.ed.gov/about/offices/list/ocr/docs/t9-rel-exempt/index.html

students, whether students actually need such resource or how they want to use it is irrelevant as a matter of law.

### A. Defendant Narrowed the Circumstances Under Which a Recipient May be Liable under Title IX Citing to Incomparable Cases.

Defendant cited to four cases from incomparable circumstances for its flawed arguments: In *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353 (S.D.N.Y. 2016), the plaintiff—a male student did not allege gender-based harassment, and the accused female student's allegedly harassing conduct was not sexual in nature. Paul Nungesser, who alleged anally raped a peer student—Emma Sulkowicz during his time at Columbia, brought a practically unactionable litigation against his school with the sole purpose to restore his reputation. As part of parties' settlement discussion, Nungesser once demanded the university to make a public statement siding with him on this matter.  In *Doe v. Univ. of Kentucky* (6th Cir. 2020) genuine disputes of material fact remained as that plaintiff, who was enrolled at community college that had close academic relationship with state university and was living on university's campus, dining on campus, and participating in university's student activities, was denied benefits of education program or activity furnished by university, thus precluding summary judgment on her standing to pursue Title IX claim that university was deliberately indifferent to sexual assault against her in her dorm room on campus by male university student.  In *Raihan v. George Washington Univ* (D.D.C. 2018), use of gym is incomparable with use of library—which is considered an integral part to an educational institute. *Raihan* is also from an irrelevant jurisdiction. In *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627 (E.D.N.Y. 2013), that plaintiff alleged a single incident of harassment (instead of assault) which was not sufficiently severe to impose liability.

### B. Defendant Fabricated or Conflated Legal Requirements About "Loss of

**Educational Benefits"—i.e., Timing, specific remedy.**

The alleged Title IX violation is "failure to adequately investigate sexual assault complaint", not "excluding plaintiff from using library based on her gender". Defendant received actual notice of plaintiff's report in August 2019.

There is no legal requirement about timing of the "loss of educational benefits"—a modifier to prescribe what kind of sexual harassment is prohibited by Title IX. And Defendant is never required to remedy such loss of educational benefits, let alone the timeliness of the "remedy". It is only required to adequately investigate plaintiff's Title IX complaint made in August 2019, which it failed. See *Davis v. Monroe Cnty. Bd. of Educ.,* 526, 648 U.S. 629 (1999) "Likewise, the dissent erroneously imagines that victims of peer harassment now have a Title IX right to make particular remedial demands. See post, at 1691 (contemplating that victim could demand new desk assignment). The dissent consistently mischaracterizes this standard to require funding recipients to "remedy" peer harassment, post at 1678, 1680, 1683, 1690, and to "ensur[e] that ... students conform their conduct to" certain rules, post at 1682. Title IX imposes no such requirements." In fact, it's unrealistic to expect victims' "loss of educational benefits" (avoiding library due to the psychological trauma) occur after she made report to school, if the school wants the victim to recover first and be fully prepared for the upcoming proceeding.

III.    **Plaintiff has Adequately Alleged "Policy Ambiguity or Deficit" and Improper Interpretations as "Clearly Unreasonable" Pursuant to Holdings in *Davis* \*640.**

"When Congress acts pursuant to its spending power, it generates legislation "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In interpreting language in spending legislation, we thus "insis[t] that Congress speak with a clear voice," recognizing that "[t]here can, of course, be no

9

knowing acceptance [of the terms of the putative contract] if a State is unaware of the conditions [imposed by the legislation] or is unable to ascertain what is expected of it." Ibid.; see also id., at 24–25, 101 S.Ct. 1531." *Davis*, 640. Plaintiff has adequately alleged policy ambiguities, improper interpretations in ¶¶ 212-244. Defendant failed to contend those allegations, nor did it explain how choosing one interpretation over the other better represents the principle of Title IX.

## A. Sex Discrimination and Title IX Violation Take Different Forms as Recognized by Supreme Court—including "Failure to Adequately Investigate Sexual Assault Complaints".

The Supreme Court and Department of Education have recognized/clarified multiple forms of sex discrimination and Title IX violation.

See *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167,168, 169,174 (2005) "Nor can the Board rely on the principle that, because Title IX was enacted as an exercise of Congress' Spending Clause powers, a private damages action is available only if the federal funding recipient had adequate notice that it could be held liable for the conduct at issue, see, *e.g., Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694. *Pennhurst* does not preclude such an action where, as here, the funding recipient engages in intentional **1502 acts that clearly violate Title IX. See, *e.g., Davis, supra,* at 642, 119 S.Ct. 1661.Moreover, the Board should have been put on notice that it could be held liable for retaliation by the fact that this Court's cases since *Cannon* have consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination; by Title IX itself, which expressly prohibits intentional conduct that violates clear statutory terms, *Davis,* 526 U.S., at 642, 119 S.Ct. 1661; by the regulations implementing Title IX, which clearly prohibit retaliation and have been on the books for nearly 30 years; and by the holdings of all of the Courts of Appeals that had considered the question at

the time of the conduct at issue that Title IX covers retaliation. The Board could not have realistically supposed that, given this context, it remained free to retaliate against those who reported sex discrimination." Cf. *id.,* at 644, 119 S.Ct. 1661. Pp. 1508–1510.

"The Court of Appeals' conclusion that Title IX does not prohibit retaliation because the "statute makes no mention of retaliation," 309 F.3d, at 1344, ignores the import of our repeated holdings construing "discrimination" under Title IX broadly. Though the statute does not mention sexual harassment, we have held that sexual harassment is intentional discrimination encompassed by Title IX's private right of action."

"rather, fund recipients may be liable in damages only where their own deliberate indifference effectively caused the discrimination." *Davis*, 642 "Sexual harassment is a form of "discrimination" for Title IX purposes." 673

On November 21, 2022, the Supreme Court refused to hear two cases similar with this one: *Fairfax County School Board, Petitioner v. Jane Doe*, No.21-968 and *University of Toledo, Petitioner v. Jaycee Wamer*, No. 22-123. The central issue of these two cases is: whether a recipient may be liable when it did not actually cause a student to undergo sexual harassment. The Supreme Court had asked Biden Administration to weigh in on the school board's appeal. The Justice Department in September told the justices that schools should be held accountable for their response to sexual harassment by students that they learn about after it happens and urged the justices to deny the appeal.[7]

On September 7, 2022, Department of Education filed an amicus curiae brief for *Czerwienski et al v. President and Fellows of Harvard College et al*, Civ. No. 1:22-cv-10202-

---

[7] U.S. Supreme Court lets sexual harassment suits proceed against schools (Nov. 21, 2022)
https://www.reuters.com/legal/us-supreme-court-lets-sexual-harassment-suits-proceed-against-schools-2022-11-21/

JGD, Doc.78, clarifying that deliberate indifference/immobilization to retaliation (a form of sex discrimination) against Title IX participants is a valid claim.

**B. Defendant's Inadequate Response Resulted from Its Deficient "Official Policy" and Numerous Misinterpretations as "Official Decisions".**

Plaintiff has adequately alleged "policy vagueness" as discussed in *Davis*, 640. ¶¶ 212-244. As a result, defendant successfully tailored a predetermined outcome and found male respondent "not responsible". In its motion, Defendant now indicated that if plaintiff could provide the exact same evidence ¶¶ 166-171 during investigation, there might have been different outcome. Not necessarily. For each investigative interviewed, plaintiff was accompanied by her then-attorney advisor, Jeremy Saland, who assured plaintiff that her responses at each interview was clear and convincing enough. Upon hearing plaintiff's response, the Title IX investigators however never gave any feedback—i.e., whether they understood or believed plaintiff's explanation. In fact, it does not even matter whether they understood or believed. The Court should be able to draw inferences from all facts that the investigators probably were not at liberty to exercise their legal expertise and make recommendation if Columbia had been tailoring Title IX outcomes since 2014. The GBM office was only tasked to manufacture certain outcomes as James J. Valentini told them to, at all costs.

Defendant did not respond or contend this allegation—policy ambiguities, therefore has waive its arguments in reply brief.

**C. The Second Circuit Dissent[8] is Complementary to Plaintiff's Claim on "Policy of Deliberate Indifference".**

---

[8] Exhibit C of SAC.

"Failure to adequately investigate title ix complaint" and "erroneous outcome" claim are two sides of the same coin—both results from the school's deliberately indifferent treatment. Depending on a particular school's administrative needs at a time, "the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action." *Doe v. Columbia Uni.* 831 F.3d 46 (2d Cir. 2016). Since a university policy affects both male and female students, the Court should consider how its ruling will affect both genders in evaluating the policy.

In recent years, there has been a disturbing trend of weaponizing the victimhood of sexual assault across all contexts. Sexual assault is bad because it's a deprivation of one's personal autonomy (over the body), misusing others' victimhood to disguise a school-wide bully by third party is also a violation of personal autonomy (over decision-making). Witness#2 does not want to be perceived as emotional blackmailing or vengeful person, so he took advantage of plaintiff's "friendless status" (not Roe) and told other students that it was her idea to expose Roe.

Misusing or weaponizing victimhood of sexual assault takes two forms: (1) when someone misusing the concept of victimhood by making false allegation or disproportionate representation—i.e., Fiebleman's accuser, Amber Heard; (2) misusing others' victimhood for personal/political agenda—i.e., Andrew Cuomo, Witness#2. ¶¶135-145.

Affording due process rights to the accused of sexual misconduct and tightening the rules for retaliation under Title IX can deter misusing victimhood of sexual assault. Once the victim fully cooperates with the school proceeding, the accused won't be able to use "improper process" as defense after receiving an undesirable outcome. Advocating due process rights for the accused eventually helps legitimate victims of sexual assault.

Defendant failed to accept ¶¶ 135 as true. Pleading stage is not meant to resolve factual disputes. However, the provision it referenced to— "inform all University affiliates, including students, faculty and staff participating in a disciplinary process that they are expected to maintain the privacy of the process." ECF 12-1 at 23-24, rather proved this allegation. If participants/witnesses in the disciplinary process are not shared with parties' testimonials, they won't need to maintain privacy of it. At minimum, this provision appears to be another example of defendant's "policy ambiguities"—as "privacy" can mean the logistics of a confidential proceeding (date, location of meetings), or the confidential information (of parties) witnesses are shared with.

## CONCLUSION

For the foregoing reasons, the Court should deny defendant's meritless motion to dismiss the Second Amended Complaint and allow plaintiff to move for summary judgement immediately ¶¶ 245, 246.

Dated: December 2, 2022                                     Respectfully submitted,

                                                            /s/ JD
                                                        *Pro Se Plaintiff*
                                                            Jane Doe
                                                            PO Box 297
                                                        New York, NY 10044
                                                            646.920.4618