UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>        *Plaintiff*,<br><br>  v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; KEVIN PITT; ALYSSA ANZALONE-NEWMAN; KRISTIN COLLADO, in their official capacities,<br><br>        *Defendants*. | No. 1:21-cv-05839 (ER) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

                     Gabrielle E. Tenzer
                     Kyla P.S. Magun
                     KAPLAN HECKER & FINK LLP
                     350 Fifth Avenue, 63rd Floor
                     New York, NY 10118
                     Telephone: (212) 763-0883
                     Facsimile: (212) 937-3734
                     gtenzer@kaplanhecker.com
                     kmagun@kaplanhecker.com

December 16, 2022

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.    This Court Can and Should Rely on Its Decision Dismissing the Amended Complaint. ................................................................................................................ 1

    II.    Plaintiff's Allegations That Conflict with Documents Integral to the SAC Should Not Be Accepted as True. ....................................................................................... 2

    III.    Plaintiff Fails to Allege That She Was Denied Educational Opportunities or Benefits. ................................................................................................................... 3

    IV.    Plaintiff Fails to Allege That Columbia's Actions Were Clearly Unreasonable. ... 3

CONCLUSION ............................................................................................................................... 5

APPENDIX ..................................................................................................................................... 7

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Bailey v. N.Y. Law Sch.*,
  No. 16 Civ. 04283, 2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017) ........................................... 2

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .................................................................................................... 2

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ........................................................................................................ 3, 4, 5

*Dish Network Corp. v. Ace Am. Ins. Co.*,
  431 F. Supp. 3d 415 (S.D.N.Y. 2019) ..................................................................................... 2

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ..................................................................................................... 2

*Doe v. Univ. of Ky.*,
  959 F.3d 246 (6th Cir. 2020) ................................................................................................... 3

*Doe v. Univ. of Ky.*,
  971 F.3d 553 (6th Cir. 2020) ................................................................................................... 3

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
  No. 13 Civ. 2200, 2013 WL 177911 (S.D.N.Y. Jan. 13, 2013) .............................................. 4

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) .................................................................................................... 2

*Leroy v. Delta Air Lines*,
  No. 21 Civ. 267, 2022 WL 12144507 (2d Cir. Oct. 27, 2022) ................................................ 2

*Munoz-Nagel v. Guess, Inc.*,
  No. 12 Civ. 01312, 2013 WL 6068597 (S.D.N.Y. Nov. 15, 2013) ......................................... 2

*Roskin-Frazee v. Columbia Univ.*,
  474 F. Supp. 3d 618 (S.D.N.Y. 2019) ..................................................................................... 1

*Transcience Corp. v. Big Time Toys, LLC*,
  50 F. Supp. 3d 441 (S.D.N.Y. 2014) ....................................................................................... 1

*Tubbs v. Stony Brook Univ.*,
  343 F. Supp. 3d 292 (S.D.N.Y. 2018) ..................................................................................... 4

*Workneh v. Super Shuttle Int'l, Inc.*,
    No. 15 Civ. 03521, 2017 WL 6729297 (S.D.N.Y. Dec. 28, 2017) .............................................. 2

Columbia respectfully submits this Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Second Amended Complaint.[1]

## PRELIMINARY STATEMENT

As in her Amended Complaint, Plaintiff's one remaining claim in her SAC boils down to a disagreement with Columbia's GBM Policy and a frustration with the outcome of Columbia's investigation of her GBM complaint. But as this Court has already recognized, that is simply not enough to state a Title IX deliberate indifference claim. *See* ECF 71 at 29. Since nothing in Plaintiff's SAC changes this Court's prior analysis, the SAC should be dismissed with prejudice.

## ARGUMENT

**I.      This Court Can and Should Rely on Its Decision Dismissing the Amended Complaint.**

Plaintiff contends that this Court's decision on the Motion to Dismiss the Amended Complaint (ECF 71) is a "pending," "advisory opinion[]" and therefore contains "no precedential value." Opp'n at 1. Not so. The Court's opinion remains good law and is binding. *See, e.g.*, *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451 n.6 (S.D.N.Y. 2014) (Ramos, J.) ("An advisory opinion constitutes a decision of law concerning a set of facts which are hypothetical or speculative, facts which do not now exist and whose existence is not imminent." (citation omitted)).

Moreover, when considering a motion to dismiss an amended complaint, courts generally rely on their earlier opinion dismissing the prior complaint in the same action. *See, e.g.*, *Roskin-Frazee v. Columbia Univ.*, 474 F. Supp. 3d 618, 620, 623–27 (S.D.N.Y. 2019) (relying on prior

---

[1] Capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendant's Motion to Dismiss the Seconded Amended Complaint ("Br.," ECF 77). References to "¶ __" are to paragraphs of the SAC (ECF 73), and references to "Defendant" are to the sole remaining Defendant in the case, Columbia. References to "Opp'n" are to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Second Amended Complaint (ECF 78).

1

order dismissing complaint when dismissing amended complaint); *Workneh v. Super Shuttle Int'l, Inc.*, No. 15 Civ. 03521, 2017 WL 6729297, at *4 (S.D.N.Y. Dec. 28, 2017) (Ramos, J.) (same); *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 01312, 2013 WL 6068597, at *2 (S.D.N.Y. Nov. 15, 2013) (Ramos, J.) (same). This Court can and should do the same here, particularly since nothing in Plaintiff's SAC changes the nature of her one remaining claim or cures the deficiencies identified by the Court in its prior Order. *See generally* Br.

## II. Plaintiff's Allegations That Conflict with Documents Integral to the SAC Should Not Be Accepted as True.

Plaintiff mistakenly asserts that when her allegations conflict with the Investigative Report, the Court should still credit her allegations. *See* Opp'n at 4. But as this Court is well aware, on a motion to dismiss in this Circuit, "[i]f a plaintiff's own pleadings are contradicted by matters in [incorporated] documents, the Court need not reconcile this difference or accept the plaintiff's pleadings as true." *Bailey v. N.Y. Law Sch.*, No. 16 Civ. 04283, 2017 WL 6611582, at *7 (S.D.N.Y. Dec. 27, 2017) (Ramos, J.); *accord Leroy v. Delta Air Lines*, No. 21 Civ. 267, 2022 WL 12144507, at *1 nn.2–3 (2d Cir. Oct. 27, 2022) (summary order) (same); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (same); ECF 71 at 24, 26.[2]

Simply removing certain allegations from the SAC and not attaching the Investigative Report or the GBM Policy to the SAC, as Plaintiff has done here, does not cure the SAC of its contradicted allegations. *Cf.* Opp'n at 3. Even if not attached, the Investigative Report and the GBM Policy remain integral to the SAC because they are extensively cited and referenced in it. *See, e.g.*, ¶¶ 149, 163, 165, 239 (referencing Investigative Report); ¶¶ 213, 216, 220, 223, 235, 240 (citing GBM Policy); ECF 71 at 20 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53

---

[2] *Doe v. Princeton Univ.*, 30 F.4th 335 (3d. Cir. 2022), and other out-of-circuit cases cited by Plaintiff, *see* Opp'n at 5, are not binding on this Court. *See, e.g.*, *Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 425 (S.D.N.Y. 2019), *aff'd*, 21 F.4th 207 (2d Cir. 2021).

2

(2d Cir. 2002)). Accordingly, these documents can and should continue to be relied upon on this motion. And because the SAC still contains allegations that conflict with these documents, the Court need not accept the contradicted allegations as true. *See, e.g.*, ¶¶ 127, 130, 135–37, 147, 150–52, 162, 163–65, 173, 178, 189, 192, 199, 214, 219, 226, 236, 238–39.

**III.   Plaintiff Fails to Allege That She Was Denied Educational Opportunities or Benefits.**

Acknowledging well-established Supreme Court precedent, Plaintiff agrees that to plead a deliberate indifference claim, she must show that there was a "concrete, negative effect" on her "ability to receive an education." *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 654 (1999); *see also* Opp'n at 6–7. Yet, Plaintiff fails to cite to a single court decision supporting her position that the alleged unavailability of one of several campus libraries, for which she has alleged no special use, need, or requirement, and has alleged unavailability only for a limited period of time, is somehow sufficient to satisfy this high standard. *See* Opp'n at 6–7. Plaintiff also fails in her effort to distinguish the cases cited by Columbia. *See id.* at 8. Plaintiff discusses the wrong decision, *id.* (discussing *Doe v. Univ. of Ky.*, 971 F.3d 553 (6th Cir. 2020), rather than *Doe v. Univ. of Ky.*, 959 F.3d 246 (6th Cir. 2020)); relies on facts other than any alleged loss of educational benefits, *id.* (discussing *Nungesser* and *Carabello*); and simply makes the conclusory statement that "use of gym [*sic*] is incomparable with use of library [*sic*]," *id.* (citing *Raihan*).

**IV.   Plaintiff Fails to Allege That Columbia's Actions Were Clearly Unreasonable.**

Attempting to clarify the basis for her deliberate indifference claim, Plaintiff now asserts that Columbia's GBM Policy is "ambiguous" and therefore applying it results in a "failure to adequately investigate" her GBM complaint, contrary to legislative intent.[3] Opp'n at 1–2. Citing

---

[3] Plaintiff's assertion that Columbia "did not respond or contend this allegation—policy ambiguities, therefore has waive[d] its arguments," Opp'n at 12, is incorrect. Columbia's opening brief not only addresses Plaintiff's claim that Columbia's policies, training, and supervision are inadequate and at odds with Title IX, *see* Br. at 9, but it also explains

3

irrelevant Supreme Court briefing, as well as decisions outlining general Title IX liability that are not on point, *see id.* at 9-12, Plaintiff argues that as a result of its allegedly deficient policies, Columbia not only failed to adequately investigate her GBM complaint, but also "tailored a predetermined outcome." *Id.* at 1, 12.[4]

Plaintiff's basic argument—that the GBM Policy is somehow "deficient" and therefore any response in accordance with that Policy was "clearly unreasonable"—is unsupported by her allegations in the SAC. *See* Br. at 9–14. Indeed, this Court has already concluded that Columbia has a "comprehensive and considered GBM Policy and adhered to it in adjudicating Doe's claims." ECF 71 at 24. Not only is Plaintiff asking this Court to overturn its prior, well-reasoned ruling (even though her allegations about the GBM Policy and its implementation have not changed in any significant way in her SAC), but she is also asking the Court to second guess the adequacy of Columbia's policies and procedures, something courts in this Circuit are generally reluctant to do. As one court has explained, courts are advised "to defer to schools' internal procedures, and to even pardon noncompliance, so long as schools otherwise demonstrate attentiveness to the issue." *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 316 (S.D.N.Y. 2018); *see also, e.g.*, *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 13 Civ. 2200, 2013 WL 177911, at *6 (S.D.N.Y. Jan. 13, 2013) (Ramos, J.) (Title IX deliberate indifference claims require "something more than a proffer indicating the ultimate inadequacy of preventative and curative measures. Instead, the measures taken must be so inadequate that a degree of discriminatory intent may be inferred." (internal quotation removed)).

Plaintiff cites to *Davis* and paragraphs 212 through 244 of her SAC in support of her

---

in detail why each of the issues that Plaintiff has raised with the GBM Policy and its implementation fails to support a deliberate indifference claim, *id.* at 9–14.

[4] Plaintiff's references to a "predetermined outcome" are conclusory and devoid of any supporting allegations in the SAC. There is therefore no need to address them further here.

4

argument that she has "adequately alleged 'policy vagueness.'" Opp'n at 12. But *Davis* includes no holding that "policy vagueness" is a legitimate basis for a deliberate indifference claim. *See Davis*, 526 U.S. 629. And regardless, as shown in the attached Appendix, paragraphs 212 through 244 of the SAC do not come anywhere close to alleging that the GBM Policy, or Columbia's response to Plaintiff's GBM complaint in following that Policy, were "clearly unreasonable."

At bottom, like her Amended Complaint, the SAC amounts to nothing more than Plaintiff's disagreement with Columbia's GBM Policy and her frustration with the outcome of Columbia's investigation. *See* ECF 71 at 29. But that is not enough. As this Court has already recognized in its prior Order, "a mere preference for different procedures or, indeed, dissatisfaction or disagreement with the procedures used," which is all that Plaintiff is alleging here, "is insufficient to state a claim for deliberate indifference." *Id.*[5]

## CONCLUSION

For the foregoing reasons and those set forth in Columbia's opening brief, Columbia respectfully requests that the Court grant this motion in its entirety, with prejudice.

Dated: December 16, 2022

Respectfully submitted,

By: _____
Gabrielle E. Tenzer
Kyla P.S. Magun
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Facsimile: (212) 937-3734

---

[5] The Second Circuit concurrence attached to Plaintiff's SAC does not support her claim either. *Cf.* Opp'n at 12. In his concurrence, Judge Cabranes criticized that university's investigation in that case because: (1) the respondent was denied access to counsel; (2) the respondent was not informed of the allegations against him; (3) the respondent was denied the ability to question witnesses; (4) adverse inferences were made; and (5) an inappropriate burden of proof or standard of evidence was applied. ECF 73-3 at 3. Plaintiff makes no similar allegations here.

5

gtenzer@kaplanhecker.com
kmagun@kaplanhecker.com

*Attorneys for Defendant The Trustees of
Columbia University in the City of New York*

**APPENDIX**

| **Policy Provision Quoted in SAC** | **Plaintiff's Related Allegations** | **Columbia's Policy Interpretation and Implementation** |
|---|---|---|
| "The Investigative Team will . . . ask each party to provide a list of witnesses and/or any relevant documents or evidence to be considered. The Investigative Team has the discretion to determine the relevance of any proffered witness and/or evidence and determine that certain witnesses and/or evidence should be included or excluded in the investigative process." ¶ 213. | The Title IX Team determined Dr. Efron's expert opinion was beyond consideration and irrelevant, which can "effectively make it impossible" for victims of sexual assault to prove that they were injured. ¶¶ 214–15. | The decision not to include expert testimony was in accordance with the GBM Policy, which places that decision within the discretion of the Investigative Team. Moreover, Plaintiff's medical records were considered and those relied upon were included in the Investigative Report. *See* Br. at 10. |
| "A party has the right to request that evidence regarding their mental health diagnosis and/or treatment be excluded from consideration when responsibility is being determined," but that if a party "wishes to present evidence of their own mental health diagnosis and treatment, he/she may do so *in limited circumstances*." ¶ 216. | The quoted portion of the GBM Policy is ambiguous, as it can have multiple interpretations that apply to different contexts, and the investigators applied the wrong interpretation here, preventing Plaintiff from proving her injury. ¶¶ 217–19. | The GBM Policy allows either party (complainant or respondent) to request that mental health evidence not be considered at all or that it be considered in limited circumstances. *See* ECF 12-1 at 37. Here, all of Plaintiff's mental health evidence was considered at her request, including her written records from her visits to Counseling and Psychological Services and from a private mental health professional. *See* Br. at 10–11; Rep. at 4 n.4. |
| "If the Investigative Team determines that expertise on a topic will assist the Hearing Panel in making its determination(s), the Investigative Team may include in the investigative record medical . . . expert testimony and materials . . . that it deems relevant and reliable. A party may also request that a topic be considered by an expert, but a party is not permitted to retain their own expert to consider a topic or submit testimony and/or records as part of the investigation. *In the limited* | Dr. Efron and Plaintiff's SVR advocate were Columbia's own employees and Columbia refused to admit their testimony. ¶¶ 221–22. | The GBM Policy is unambiguous that expert testimony is admitted in only limited circumstances and that a party is not permitted to select their own expert. *See* Br. at 10. Moreover, any medical records that Plaintiff submitted were considered by the Investigative Team. Rep. at 4 n.4. |

7

| Policy Provision Quoted in SAC | Plaintiff's Related Allegations | Columbia's Policy Interpretation and Implementation |
|---|---|---|
| *circumstance* that the Investigative Team grants a party's request for an expert to consider a topic, then the Investigative Team will retain an appropriate expert." ¶ 220. | | |
| "[W]itnesses are not involved in the hearing process."<br><br>"[The Hearing Panel is] tasked with evaluating and analyzing all relevant information in the Investigative Report . . . as well as any relevant additional submissions and information presented by the parties in the hearing process." ¶ 223. | The GBM Policy has two interpretations regarding witnesses at hearings, one of which allows witnesses to attend in some circumstances. And since the hearing process does not involve witnesses and only includes evidence the investigators deem relevant, the process is a "mere formality." ¶¶ 224–34. | The GBM Policy is clear that "[w]itnesses are not involved in the hearing process." ECF 12-1 at 42; Br. at 12–13. Moreover, the GBM Policy's in-depth explanation of the hearing process demonstrates that the hearing is not a "mere formality." *See* ECF 12-1 at 41. |
| "Confidential resources, such as counseling staff, Disability Services staff, and staff from Sexual Violence Response, are *not obligated to* report disclosures of gender-based misconduct except for aggregate statistical data that does not include individuals' names or identifying information. They will not share identifying information with SCCS about a student or an incident *without the student's permission*, except under exigent circumstances as required by law." ¶ 235. | The GBM Policy permits Plaintiff to waive confidentiality, which Plaintiff did implicitly by providing her GHAP session notes. Nevertheless, Columbia still did not interview her GHAP Advisor. ¶¶ 236–39. | At no time did Plaintiff request that her GHAP advisor be interviewed, nor did she waive confidentiality on that point. *See* Br. at 13. The Investigative Team abided by the confidentiality policy by not sharing any information without Plaintiff's permission. *Id.* |
| "If there is reason for concern about possible retaliation or harm, the University will take measures in consultation with the affected students." | The Investigative Team took no action to respond to Plaintiff's private information being spread among the | Plaintiff provides only vague allegations regarding Witness #2's behavior and does not allege that Witness #2 learned the information that he allegedly shared with others by participating in the GBM |

8

| Policy Provision Quoted in SAC | Plaintiff's Related Allegations | Columbia's Policy Interpretation and Implementation |
|---|---|---|
| "Any adverse action or threatened action, taken or made, personally or through a third-party, against someone who has reported a gender-based misconduct complaint (a Complainant) or has been the subject of a gender-based misconduct complaint (a Respondent) or any other individual (a Witness, Third-Party Reporter or Advisor, etc.) because the individual engages with the Office and/or the disciplinary process; Retaliation includes maliciously or purposefully interfering with, threatening, or damaging the academic or professional career of another individual, before, during or after the resolution of a report of gender-based misconduct under this Policy."<br><br>"It will inform all University affiliates, including students, faculty and staff participating in a disciplinary process, that they are expected to maintain the privacy of the process."<br><br>"The University values the privacy of its students, employees, and other community members. Community members should be able to seek the assistance they need without fear that the information they provide will be shared more broadly." ¶ 240. | student body, claiming that Witness #2 was no longer a student, so they could not do anything. ¶¶ 241–44. | process. *See* Br. at 14. While the GBM Policy provides that all participants in the process are "expected to maintain the privacy of the process," the University does not and cannot guarantee privacy.[6] *Id.* at 14 n.9; ECF 12-1 at 36.<br><br>To the extent that Plaintiff now attempts to suggest that Witness #2's actions were retaliatory, *see* Opp'n at 13, even if Plaintiff had plausibly alleged that Witness #2 inappropriately shared her story, such behavior would not meet the GBM Policy's definition of retaliation. *See* ECF 12-1 at 10 (retaliation constitutes an "adverse action" taken "because the individual engages with the Office and/or the disciplinary process"). Plaintiff does not allege that Witness #2 took any actions against her because she engaged in the disciplinary process—in fact, she specifically alleges that his actions were focused on John Roe. *See* ¶¶ 137–39, 141. |

---

[6] Plaintiff argues that Columbia "failed to accept ¶¶ [*sic*] 135 as true." Opp'n at 14. But Paragraph 135 is contradicted by the GBM Policy, and therefore need not be taken as true. *See supra* at 2–3. Nowhere in the GBM Policy does it say that "witnesses will review evidence and testimonials submitted by parties regarding the alleged misconducts [*sic*] before they answer investigators' questions," as Plaintiff alleges. *Compare* ¶ 135, *with* GBM Policy.